**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Dominick DeSimone                       :
                                        :   CIVIL ACTION
               v.                       :
                                        :    NO:  2:19-cv-06150-GJP
U.S. Claims Services, Inc. and          :
Paul Hashim                             :
                                        :
                                        :

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND FOR
LACK OF SUBJECT MATTER JURISDICTION**

John P. Quinn, Esq.                     William W. Palmer, Esq.
Karen Grethlein, Esq.                   PALMER LAW GROUP, A PLC
MARSHALL DENNEHEY                       Admitted *Pro Hac Vice* Counsel
WARENER COLEMAN &                       Attorney for Defendants
GOGGIN, P.C.                            2443 Fair Oaks Blvd., No. 545
Attorney ID No.: 85239                  Sacramento, California 95825
Attorney for Defendants                 (916) 972-0761
2000 Market Street, Suite 2300          wpalmer@palmercorp.com
Philadelphia, Pennsylvania 19103
(215) 575-2883
jpquinn@mdwcg.com
kegrethlein@mdwcg.com

## TABLE OF CONTENTS

I.    SUMMARY ...................................................................................1

II.   BACKGROUND AND PROCEDURAL FACTS ......................................4

III.  LEGAL ANALYSIS ......................................................................9

      A.   The Legal Presumption Announced by The United States Supreme
           Court and Congress Favors Defendants' Removal of This Action.....10

      B.   A Preponderance of Evidence Further Supports Defendants'
           Removal Request ...............................................................12

IV.   CONCLUSION ...........................................................................14

## TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*CMH Homes, Inc. v. Goodner,*
    729 F3d 832, 838 (8th Cir. 2013) ...................................................................13

*Dart Cherokee Basin Operating Co. v. Owens,*
    574 U.S. 81 (2014) ........................................................1, 8, 9, 10, 11, 12, 13

*Frederico v. Home Depot,*
    507 F3d 188 (3d Cir. 2007) ........................................................................10

*Ibarra v. Manheim Investments, Inc.,*
    775 F3d 1193 (9th Cir. 2015) ........................................................9, 11, 12, 14

*Jones v. Flowers,*
    547 U.S. 220 (2006) ..................................................................................3

*LaCross v. Knight Transp. Inc,,*
    775 F3d 1200, 1202-1203 (9th Cir. 2015) ..................................................14

*Morgan v. Gay,*
    471 F3d 469 (3d Cir. 2006) ......................................................................10

*Mullane v. Central Hanover Bank & Tr. Co.,*
    339 U.S. 306 (1950) ..................................................................................3

*Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,*
    728 F.3d 975, 981 (9th Cir. 2013) ..............................................................9

*St. Paul Mercury Indem. Co. v. Red Cab Co.,*
    303 U.S. 283, 289 (1938) ..........................................................................9

*Singer v. State Farm Mut. Auto. Ins. Co.,*
    116 F.3d 373, 377 (9th Cir. 1997) ........................................................9, 10

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
    159 F.3d 1209, 1213 (9th Cir. 1998) ........................................................13

*Standard Fire Insurance Co. v. Knowles,*
    568 U.S. 588 (2013) ............................................................................9, 11, 12

*Taylor v. Westly,*
    402 F.3d 924 (9th Cir. 2005); *reh'g* and *reh'g en banc den.,*
    ___ F.3d ___ (May 13, 2005) ....................................................................2

*Taylor v. Westly,*
   488 F.3d 1197, 1200-02 (9th Cir. 2007)...........................................................................2

*Taylor v. Yee,*
   136 S. Ct. 929 (2016) ......................................................................................................6

*Verma v. 3001 Castor, Inc.,*
   937 F3d 221 (2019) ..........................................................................................................1

*Worthams v. Atlanta Life Ins. Co.,*
   533 F.2d 994, 998 (6th Cir. 1976)..................................................................................13

## FEDERAL STATUTES AND REGULATIONS

### United States Code

28 U.S.C. § 1332(d) ................................................................................................1, 8, 10

28 U.S.C. § 1332(d)(6) ..................................................................................................12

28 U.S.C. § 1441(a) .......................................................................................................10

28 U.S.C. § 1446(c)(1)....................................................................................................10

28 U.S.C. § 1446(c)(2)(B) ........................................................................................11, 13

28 U.S.C. § 1453(b) .......................................................................................................10

### Federal Rules Of Civil Procedure

Rule 11 .............................................................................................................................9

Rule 12(b)(6)...............................................................................................................2, 8, 9

## PENNSYLVANIA STATE STATUTES

73 P. S. §§ 201-1, *et seq.*................................................................................................4

72 P.S. §§ 1301.1, *et seq.* ..........................................................................................2, 5

72 P.S. § 1301.10a .........................................................................................................2

72 P.S. § 1301.11a ..........................................................................................................4

72 P.S. §§ 1301.11, *et seq* ............................................................................................5

72 P.S. § 1301.11(g) .................................................................................................4, 5

72 P.S. § 1301.11(g)(2)...................................................................................................3

72 P.S. § 1301.12 .......................................................................................................3, 5

## TEXAS STATE STATUTES

## BUSINESS & COMMERCE CODE

§§ 17.41, *et seq* ...........................................................................................................4

Defendants U.S. Claims Service, Inc., dba Payne Richards & Associates ("Payne Richards" or "Defendant") and Paul Hashim ("Hashim") (collectively, "Defendants"), by and through their counsel Marshall Dennehey Warner Coleman & Goggin and Palmer Law Group, a PLC, oppose Plaintiff's Motion to Remand For Lack of Subject Matter Jurisdiction and, in support thereof, submit the following Memorandum of Law and the accompanying Request for Judicial Notice and the Declaration of Aaron Hashim, as follows:

I.   **SUMMARY**

Plaintiff Dominick DeSimone ("Plaintiff") seeks to defeat the Defendants' removal of this action to the United States District Court for the Eastern District of Pennsylvania from the Philadelphia Court of Common Pleas by limiting the jurisdictional amount of the recovery in his nationwide class action Complaint to "does not exceed $5,000,000." (Complaint "Com." at ¶ 6.) The Complaint alleges all other elements necessary for jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), including, an "class size of 1,000" with class members who seek "$100 to $1,000" (*id*., at ¶ 49.), treble damages, attorney's fees, and other relief as the Court deems proper.  (*Id*., at ¶ 69.)

The central issue is therefore the single element of whether the jurisdictional threshold of $5,000,000 is reached.  Facially, a "good faith" reading of the Plaintiff's Complaint reveals that the claims exceed the jurisdictional requisite of $5,000,000.  And the presumption is in favor of proper removal under the United States Supreme Court's decision in *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014) ("*Dart*"). (*See also Verma v. 3001 Castor, Inc*., 937 F3d 221 (3rd Cir. 2019) (citing same); *Coba v. Ford Motor Co*., 932 F3d 114 (3rd Cir. 2019).)  Once the removal is challenged, the Defendants are entitled to submit evidence in support of their removal of this case.  (*See Dart*, 574 U.S. at 88 ("In such a case, both sides submit proof and the

1

court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.").)  Defendants have provided the "preponderance of evidence" here to further show the Court that the Plaintiff's claims far exceed $5,000,000. (*See* Defendants' Request for Judicial Notice "RFJN" No. 1 – copy of Defendants' website showing Defendant has assisted over 500,000 people; Declaration of Aaron Hashim "Hashim Decl." at ¶ 2 (attesting to the fact that Defendant has sent approximately 112,804 notices since January 1, 2018 with a rough value of $12,000,000.)

As a practical matter, the allegations of the Complaint are inherently inconsistent and fail to state a claim as a matter of law.  Defendants have already filed an FRCP Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint.  This is because the Complaint admits that Defendants followed the law of the State of Pennsylvania, and that the Pennsylvania Office of the State Treasurer (hereafter, "Treasurer"), which administers the law, expressly approved the form contract that is attached as Exhibit A to the Complaint.  (*See* Rule 12(b)(6) Motion to Dismiss at p. 2, lines 9-11, *see also* Exhibit A, Request No. 1.)

The essence of Plaintiff's allegations are that every single mailing by these private party Defendants should include language explaining that citizens can "do the work for free."  (Com. at ¶ 41.) But the Motion to Remand (and Complaint for that matter) omit that the Plaintiff received multiple statutory notices that explained to the Plaintiff that he could recover his property "for free" as required under the State of Pennsylvania's Unclaimed Property Act ("UPA"), Title 72 P.S. Taxation and Fiscal Affairs, Article XIII.1. Disposition of Abandoned and Unclaimed Property §§ 1301.1, *et seq*.

These multiple notices to Plaintiff initially include those from the "Holder," which is the company that escheated his property to the State in the first place.  (*See* 72 P.S. § 1301.10a.)  The

2

Plaintiff next received statutory and constitutional notices from the Treasurer, who administers the Unclaimed Property Program. (*See* 72 P.S. § 1301.12; *see also Jones v. Flowers*, 547 U.S. 220 (2006); *Mullane v. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Taylor v.* Westly, 402 F.3d 924 (9th Cir. 2005); *reh'g and reh'g en banc den.* (May 13, 2005) (Discussing prerequisite constitutional notice prior to escheatment of property); *Taylor v. Westly,* 488 F.3d 1197, 1200-02 (9th Cir. 2007).)  The multiple notices sent by the Treasurer to the Plaintiff include: (1) direct mail notice; (2) publication notice; and (3) public internet website notice.  (*See* 72 P.S. § 1301.12.)  Pursuant to the UPA statutory scheme, Plaintiff's property sat at the Treasurer's unclaimed property division and was publicly listed on the Treasurer's website.

The Complaint acknowledges (at ¶12) that Plaintiff was free to claim his property from the State at any time but failed to do so.  Finally, the reason Plaintiff's property was in the custody of the Treasurer as unclaimed property in the first place is because he lost and misplaced it, so that it was "escheated" or transferred to the Treasurer as lost and unclaimed property. Despite all of the above forms of notice that Plaintiff received and that fact that Plaintiff misplaced and lost his property in the first place, Plaintiff believes that private parties engaged in locating consumers should spend money to send him, and all other individuals nationwide, written notices which explicitly tell them that the services are unnecessary and that Plaintiff and others may recover their property "for free."

Plaintiff readily admits that Defendants followed the law in Pennsylvania (*see* Com. at ¶ 22) and that the contract which Plaintiff signed with the Defendant was on the exact form and content approved by the Treasurer. (*See* 72 P.S. § 1301.11(g)(2); *see also* Exhibit A, attached hereto, which is also RFJN No. 3 - the Treasurer's express written authorization to use the form in question.)

## II.     BACKGROUND AND PROCEDURAL FACTS

On or about December 2, 2019, Plaintiff Dominic DeSimone commenced this action against Defendants alleging claims under two Counts: (1) the Pennsylvania Unfair Trade Practices and Consumer Protection Act (73 P.S. §§ 201-1, *et seq.*); and (2) the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code §§ 17.41, *et seq.*), purportedly on behalf of himself and a putative class.

Per the Complaint and pursuant to 72 P.S. § 1301.11a, Defendants are "finders" engaged in the business of connecting property owners with their unclaimed property. (Com. at ¶ 7.) After a two-year holding period, Defendants identify unclaimed property by querying the various statutorily-designated agencies that receive such property, including the Department of Treasury for the various states. (Com. at ¶ 8.) Defendants then contact the property owners of the unclaimed property and provide a Treasurer-approved form contract to recover the property belonging to them. (Com. at ¶ 9; RFJN No. 2.)

The state-approved contract used by Payne Richards discloses the nature and value of the property; the name and address of the holder; the name, address, and telephone number of the person assisting in the location of the abandoned and unclaimed property; and clearly states the fee or compensation to be paid. (*See* Com. at ¶ 29; 72 P.S. § 1301.11(g); RFJN No. 2.) After the property owner executes the contract and returns it to Payne Richards, Defendant Payne Richards completes the claim for the property owners to recover their unclaimed property. (Com. at ¶ 10.) Defendant Payne Richards agrees to provide the following services under the Contract at Section III:

> "In consideration of Agent's reasonable efforts in
> providing serves including but not limited to,
> ordering/providing proper forms, answering any questions

```
and following up with claim status, Claimant agrees to
pay Agent a fee of 15% of the amount recovered."
```

(Com. Exh. A; RFJN No. 2.)

Prior to receiving the notice from Defendants, Plaintiff has already received statutory notices from: (1) the Holder (the company escheating the property); and (2) the Treasurer in the form of direct mail, publication, and website notification.  (*See* 72 P.S. § 1301.12.)

According to the Complaint, Defendants are licensed with the Pennsylvania Department of Treasury to provide such "finders" services under Pennsylvania law.  (Com. at ¶ 25; RFJN No. 3.) Plaintiff acknowledges that finders are regulated under Pennsylvania law by the Pennsylvania Treasurer, pursuant to 72 P.S. §§1301.11, *et seq.* (Com. at ¶ 22.)  Plaintiff confirms that the contract that is issued by the Defendant Payne Richards to property owners complies with the requirements of Pennsylvania law, 72 P.S. 1301.11(g).  (Com. at ¶ 29.)

Nonetheless, despite Defendants obtaining proper licensure, complying with Pennsylvania law, and satisfying Department of Treasury mandates concerning the form of contract, Plaintiff contends that the finder services provided by Defendants – which are statutorily permitted and regulated by the Pennsylvania Government – are unnecessary for property owners to recover their unclaimed property.  (Com. at ¶ 11.)

After receiving multiple notices from the Holder and the State, Plaintiff now contends that Defendants should include additional language that tells consumers that they may claim their property "for free" (Com. at ¶ 12) though the information is included in Exhibit A which is attached to the Complaint.  The information at the top of the Contract (Exh. A) states under Section II, in relevant part:

```
"The Agent through his/her efforts has located Claimant,
who may be entitled to the assets in the possession of
the State Treasurer of Pennsylvania, 129 Finance
Building, Harrisburg, PA 17120 as described below:
```

```
Owner's Name(s):  DOMINICK DESIMONE
Owner's Reported Address:  845 CROSS ST. PHILADELPHIA,
PA
Reported By:  ARAMARK
Property Type:  WAGES; PAYROLL UNCLAIMED
Amount:  $469.10
Property ID No:  24159865
Payne Richards & Associates Reference No:  9896080"
```

(Com. Exh. A; RFJN No. 2.)

Plaintiff alleges that the failure of Defendants to advise all property owners that these finder services are "unnecessary" quoting a June 30, 2014 Los Angeles Times Story (Com. at ¶¶ 17-19) constitutes fraudulent and deceptive business practices in violation of Pennsylvania and Texas unfair trade law.  (Com. at ¶¶ 50 - 69.)  It is a matter of public record that other writers for the Los Angeles Times have condemned the unclaimed property process in the State of California in many other newspaper stories.  (*See* D. Savage, Los Angeles Times, "Is California doing enough to find owners of 'unclaimed' funds before pocketing the money?" (January 7, 2016); P. Willon, Los Angeles Times, "California, which gains $400 million in unclaimed assets a year, urged to find owners." (February 14, 2015); R. Rivenburg, Los Angeles Times, "Psst, Clooney, we found your cash." (October 9, 2004).)

By contrast to the State of Pennsylvania, the California Unclaimed Property program was the subject of a federal injunction that closed the program and forced a rewrite of those laws.  (*See Taylor v. Westly,* 488 F.3d 1197, *supra*.)  More recently, the California program was the subject of a United States Supreme Court Opinion.  (*See Taylor v. Yee,* 136 S. Ct. 929 (2016) (Op. by Supreme Court Associate Justices Samuel A. Alito, Jr., and Clarence Thomas).)  Therefore, citing California newspaper stories about a California Unclaimed Property program that was enjoined by a federal court should have no legal application or evidentiary weight in a case venued in Pennsylvania and premised on underlying violations of Pennsylvania and Texas state law.

6

Plaintiff contends that he was contacted by Defendants in April 2019 to recover $469.10 of unclaimed property held by the Pennsylvania Department of Treasury.  (Com. at ¶ 28.) Although Plaintiff admits the proposed state-approved contract sent to Plaintiff complied with Pennsylvania law (Com. at ¶ 29; RFJN No. 1), Plaintiff contends that Defendant Payne Richards did not indicate that the finder services were "unnecessary and that he could recover his unclaimed property himself."  (Com. at ¶ 30.)

Plaintiff contracted with Defendant Payne Richards to claim his property in the amount of $469.10, and Defendants promptly submitted Plaintiff's claim to the Department of Treasury in accordance with Pennsylvania law.  (Com. at ¶ 32.)  Plaintiff received his property from Treasury and several months after receiving his money, was billed by Defendants for services provided in accordance with the statutorily authorized contract.  (Com. at ¶¶ 29, 33.)  Plaintiff refused and never paid the $70.36 and instead filed this lawsuit on behalf of himself and a nationwide putative class.

Plaintiff defines his putative class as:

"all persons nationwide that [*sic*] were solicited – and had successful claims to recover personal, family or household property – for which monies were involved – or debited – by Defendant U.S. Claim Services between January 11th 2018 and present."

(Com. at ¶ 38.)

Plaintiff alleges that the potential number of class members "is estimated to be more than one-thousand."  (Com. at ¶ 45.)  Plaintiff alleges that the average class member's claim is between $100 and $1,000 per class member.  (Com. at ¶ 49.)  Plaintiff also seeks treble damages under Pennsylvania and Texas law, as well as attorney's fees, injunctive relief, and "any other relief the Court deems proper."  (Com. at ¶ 69.)  Plaintiff originally filed this action under the caption

*Dominic DeSimone v. U.S. Claim Services, Inc. and Paul Hashim*, in the Court of Common Pleas, Philadelphia County, Case No. 191200218

The Complaint was served on Defendant on December 9, 2019, and on Defendant Paul Hashim on December 13, 2019.  On December 27, 2019, Defendants filed a timely Notice of Removal pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), removing this action to this Honorable Court.  Shortly thereafter, on January 3, 2020, Defendants filed a timely Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* ECF No. 5.)  On January 7, 2020, Plaintiff filed the instant motion to remand the case to Pennsylvania State Court, Philadelphia County.  (*See* ECF No. 7.)

For instance, it is a matter of public record that the Defendant has sent out mailers and recovered claims on behalf of "500,000 people," which is far more than the 1,000 putative class members alleged on the face of the Complaint.  This information is posted on Defendant's website, as the Plaintiff should be well aware.  (*See* RFJN No. 1 - Defendant's website located at https://usclaimsservices.com/home.)  The evidence further provided by Defendants to support their removal of this action shows that a total of 112,804 signed contracts from January 1, 2018 to present and that the average claim size of roughly of $750.  (Hashim Decl. at ¶ 2.)  The Complaint seeks treble damages.  Therefore, the preponderance of evidence standard (*see Dart*, 574 U.S. at 88) shows that if the Plaintiff were to prevail, which Defendants dispute, then his claims would certainly exceed the $5,000,000 threshold, which is well in excess of the jurisdictional minimum in this case.  (*See* RFJN No. 1; Hashim Decl. at ¶ 2.)

Plaintiff's Complaint, by its plain language, seeks to recover or to compel Defendants to disgorge every payment received from the Defendant's clients.  As the Court is aware, the Plaintiff may not defeat removal jurisdiction by artificially deflating (i.e. a pleading that is not in "good

faith" and in violation of FRCP Rule 11) or stipulating to lesser sums of damages.  (*See Ibarra v. Manheim Investments, Inc*., 775 F3d 1193, 1195 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co., v. Owens,* 574 U.S. 81, 84 (2014)).)

In sum, as discussed immediately below in the legal analysis section of this brief, removal is proper and the FRCP Rule 12(b)(6) motion which is already on file is designed to protect these Defendants by allowing them the opportunity to challenge Plaintiff's Complaint "…where there is either a 'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  (FRCP Rule 12(b)(6).)

## III.   LEGAL ANALYSIS

In determining the amount in controversy, which is the central issue here, the Court first looks to the complaint. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  (*See St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938) [Footnote omitted].)   Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged.   (*See Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co*., 728 F.3d 975, 981 (9th Cir. 2013).)  In light of *Standard Fire Insurance Co. v. Knowles*, 568 U.S. at 594, *supra*, this rule is not altered even if a plaintiff, such as the one here, affirmatively contends in his Complaint that damages do not exceed $5 million.   (*See Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co*., 728 F.3d at 981, *supra*.)  The parties may submit evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  (*See Dart, Singer v. State Farm Mut. Auto. Ins.*

*Co.*, 116 F.3d 373, 377 (9th Cir. 1997) [internal quotation marks omitted].)  The following two sections expound on these two precepts.

**A.**     **The Legal Presumption Announced by The United States Supreme Court And Congress Weighs in Favor of Defendants' Removal of This Action.**

The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  (*Id.*)  A CAFA-covered class action may be removed to federal court and is subject to more liberalized jurisdictional requirements, i.e., the one-year limitation under § 1446(c)(1) does not apply, the case may be removed even if one or more defendants are citizens of the state in which the action was brought, and the case may be removed by any defendant without the consent of co-defendants. (*Id*. §§ 1441(a), 1453(b).)

Plaintiff cites two (2) cases at page 2 and throughout the Motion for Remand, which are *Frederico v. Home Depot*, 507 F3d 188 (3d Cir. 2007) and *Morgan v. Gay*, 471 F3d 469 (3d Cir. 2006).  But the reasoning of these two older cases was not followed in 2014 by the United States Supreme Court when it issued its decision in *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, *supra*), which is the controlling authority over this case.  As the Supreme Court has held, a removing party must initially file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  (*See Dart,* 574 U.S. at 88.)  The initial presumption is based on a "good faith" reading of the allegations of the complaint.  The analysis could stop here for purposes of this Opposition because a good faith reading of the instant Complaint shows claims for damages in excess of $5,000,000, which is the jurisdictional floor for removal of this case to this Court.  (*See* Com. at ¶¶ 38, 49, 69.)

But when, as here, "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." (*Id*. (citing 28 U.S.C. § 1446(c)(2)(B)).) There is no requirement that the Defendants' evidence must accompany the removal papers, as the Plaintiff now contends. (Opp. at ¶ 11 – "Other than this unsupported assertion, Defendants have failed to provide this Court with any plausible allegation – much less evidence – to establish subject matter jurisdiction.")

The Supreme Court rejects this point as follows:

It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court. (*See Standard Fire Ins. Co*., 568 U. S., at 595 ("CAFA's primary objective" is to "ensur[e] 'Federal court consideration of interstate cases of national importance.'" (quoting §2(b)(2), 119 Stat. 5)); S. Rep. No. 109-14, p. 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").)

(*See Dart*, 574 U.S. at 88, *supra*; *see also Ibarra v. Manheim Investments, Inc*. (9th Cir. 2015) 775 F3d at 1197, *supra*.)

Additional controlling authority is found in the Supreme Court's decision in *Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, *supra*, which held that a class action plaintiff's precertification stipulation that the plaintiff and the class will not seek damages over $5 million does not preclude a defendant's ability to remove the case under CAFA. This is exactly what the Plaintiff has attempted to do here by alleging "…amount-in-controversy does not exceed $5,000,000" (Com. at ¶ 6) while alleging elsewhere in the same Complaint a basic computation that may be read in "good faith" to exceed $5,000,000. (*See* Com. at ¶¶ 38, 49, 69.)

/ / /

/ / /

11

**B.      A Preponderance of Evidence Further Supports Defendants' Removal Request.**

In his Opposition, Plaintiff concocts various formulas to create the false impression that the class action claims would never exceed – much less meet – the $5,000,000 jurisdictional prerequisite of the Class Action Fairness Act of 2005.  (*See, e.g*., Opp. at. p. 3-4.)  According to Plaintiff: "This assertion relies on every class-member having the **maximum** claim; this is an objectively unreasonable assumption based upon the facts supporting Plaintiff's individual claim." (Opp. at ¶ 10 [Bolding in original].)  But, as noted above, the $5 million jurisdictional minimum may be based on an aggregation of the claims of all potential class members.  (28 U.S.C. § 1332(d)(6).)

Further, the rule is that if a plaintiff contests removal where the complaint fails to state an amount in controversy or alleges that damages "do not exceed $5 million," both sides must be given an opportunity to submit evidence, including declarations, affidavits and other "summary judgment" type evidence on the issue whether the more-than-$5 million threshold has been satisfied.  (*See Dart*, 574 U.S. at 88; *Ibarra v. Manheim Investments, Inc*., 775 F3d at 1195, *supra*.)

Plaintiff had his opportunity to submit evidence in support of his Motion to Remand but concedes that this information is solely in the possession of Defendants and he is therefore unable to challenge the evidence which these Defendants provide to the Court; Plaintiff states: "Finally, Defendants have actual knowledge of the amount in controversy – easily determined from their records – however elected to provide no evidence whatsoever."  (Opp. at ¶ 13.)

A plaintiff who files a proposed class action cannot legally bind the members of the putative class before the class is even certified.  Thus, removal jurisdiction under CAFA cannot be avoided, for example, by the named plaintiff's stipulation that he or she will seek less than $5 million for the putative class.  (*See Standard Fire Ins. Co. v. Knowles*, 568 U.S. at 594, *supra*;

*CMH Homes, Inc. v. Goodner,* 729 F3d 832, 838 (8th Cir. 2013).)  This is exactly what the Plaintiff has attempted to do here.

The Supreme Court recently held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not contain evidentiary submissions.  (*See Dart,* 574 U.S. at 88.)  But "[e]vidence establishing the amount is required" where, as here, defendant's assertion of the amount in controversy is contested by plaintiffs.  (*Id.*)  "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." (*Id.*, at 88 (citing 28 U.S.C. § 1446(c)(2)(B)).)

Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, the defendants are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because the defendants are not stipulating to damages suffered, but only estimating the damages that are in controversy.  (*See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc*., 159 F.3d 1209, 1213 (9th Cir. 1998) (holding that jurisdiction must be analyzed on the basis of pleadings filed at the time of removal and recognizing that damages may change as a result of post-removal events); *see also Worthams v. Atlanta Life Ins. Co*., 533 F.2d 994, 998 (6th Cir. 1976) (acknowledging that the amount recoverable may drop below the jurisdictional limit as a result of discovery and application of a legal defense, but the post-removal event does not deprive the district court of federal jurisdiction).)

In the present case as set forth in the sworn affidavit, Defendant has sent approximately 112,804 notices since January 1, 2018, during the class certification period alleged on the face of the Complaint, and conservatively estimates contract fees owed in the amount of $12,000,000.00.

This number is further supported and based on approximately 150 claims mailed daily with an average of $750.00 per claim, though with some values ranging as high as $100,000.00.  (*See* RFJN No. 1; Hashim Decl., at ¶ 2.)

The evidence provided by Defendants and related to the contested amount in controversy (both direct and circumstantial), using reasonable assumptions underlying the theory of damages exposure, far exceeds $5,000,000.  (*Id.*)  (*See Ibarra v. Manheim Investments, Inc.,* 775 F3d at 1199, *supra* – assumption that wage violations occurred universally in every employee shift not grounded in evidence and unreasonable; *LaCross v. Knight Transp. Inc.*, 775 F3d 1200, 1202-1203 (9th Cir. 2015).)

## IV.     CONCLUSION

WHEREFORE, for all the foregoing reasons, these Defendants respectfully request that this Honorable Court rule in favor of Defendants and deny Plaintiff's Motion to Remand For Lack of Subject Matter Jurisdiction.

January 21, 2020                                        Respectfully submitted,

**PALMER LAW GROUP, A PLC**

By:___/s/ William W. Palmer_____
          WILLIAM W. PALMER, ESQ.
          Admitted *Pro Hac Vice*
          2443 Fair Oaks Blvd., No. 545
          Sacramento, CA 95825
          (916) 972-0761

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.**

By:___/s/ John P. Quinn_____
          JOHN P. QUINN, ESQ.
          Attorney ID No.: 85239
          2000 Market Street, Suite 2300
          Philadelphia, PA  19103
          (215) 575-2883

Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Dominick DeSimone | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO:  2:19-cv-06150-GJP |
| U.S. Claims Services, Inc. and | : | |
| Paul Hashim | : | |
| | : | |
| | : | |

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF**
**OPPOSITION TO MOTION TO REMAND FOR LACK OF SUBJECT MATTER**
**JURISDICTION**

Defendants U.S. Claims Service, Inc., dba Payne Richards & Associates ("Payne Richards") and Paul Hashim ("Hashim") (collectively, "Defendants"), by and through their counsel, Marshall Dennehey Warner Coleman & Goggin and William W. Palmer, *Pro Hac Vice*, Palmer Law Group, a PLC, respectfully request that this Honorable Court take judicial notice of the following three (3) Requests for Judicial Notice ("RFJN") that incorporate Exhibits attached to the accompanying declaration.  This RFJN is filed in support of Defendants' Opposition to Motion to Remand For Lack of Subject Matter Jurisdiction.

**I.      REQUESTS FOR JUDICIAL NOTICE**

Pursuant to Rule 201 of the Federal Rules of Evidence, as further discussed immediately below, Defendants respectfully request the Court take judicial notice of the following facts and records:

**REQUEST NO. 1:**  A true and correct copy is attached to the supporting Declaration of Aaron Hashim ("Hashim Decl.") as Exhibit 1 is copy of the Defendants' website clearly indicating that they have helped over 500,000 people locate funds escheated to multiple state agencies.

**REQUEST NO. 2:**  A true and correct copy is collectively attached to the Hashim Decl. as Exhibit 2 is the March 9, 2015 finder's agreement with its written approval for use given by the Pennsylvania State Treasurer's Office, with related correspondence.  In the underlying State of Pennsylvania, the finder's fee is set by statute at fifteen percent (15%) pursuant to 72 P.S. § 1301.11(g)(2) which states that the contract must "clearly state the fee or compensation to be paid, which shall not exceed fifteen per centum of the value of the abandoned and unclaimed property." The Defendants' fee agreement otherwise complies with all requirements of the Unclaimed Property Act (72 P.S. § 1301.11(g)).

**REQUEST NO. 3:**  A true and correct copy of the notarized contracts between Plaintiff and Payne Richards are attached to the Hashim Decl. as Exhibits 3 and 4.  Defendants assisted Plaintiff Dominic DeSimone on two (2) separate occasions under two separate contracts dated May 31, 2018 and April 17, 2019, where Payne Richards incorporated all of the statutorily required information and includes the agency where the account containing the funds is located.

## II.    CONCLUSION

Accordingly, Defendant respectfully request this Honorable Court take judicial notice of RFJN Requests Nos. 1 through 3, which are attached to the supporting declaration.

January 21, 2020                                Respectfully submitted,


                                **PALMER LAW GROUP, A PLC**

                                By:____/s/ William W. Palmer_____
                                     WILLIAM W. PALMER, ESQ.
                                     Admitted *Pro Hac Vice*
                                     2443 Fair Oaks Blvd., No. 545
                                     Sacramento, CA 95825
                                     (916) 972-0761
                                     wpalmer@palmercorp.com

2

**DECLARATION OF AARON HASHIM**

1.      I am employed by defendants U.S. Claims Service, Inc., dba Payne Richards & Associates ("Payne Richards") and Paul Hashim ("Hashim") (collectively, "Defendants") in this action.

2.       Payne Richards is a firm of licensed private investigators that specializes in uncovering unclaimed funds and reuniting them with the rightful owners.  Payne Richards has sent approximately 112,804 notices since January 1, 2018, during the class certification period, as alleged on the face of the Complaint, and conservatively estimates contract fees owed of $12,000,000.00.  This number is based on approximately 150 claims mailed daily with an average of $750.00 per claim, though with some values ranging as high as $100,000.00.

3.      Attached collectively as Exhibit 1 to my declaration is a true and correct copy of Defendants website.

4.      Attached collectively as Exhibit 2 to my declaration is a true and correct copy of the March 9, 2015 finder's agreement approved by the Pennsylvania State Treasurer's Office, which complies with all requirements of the Unclaimed Property Act (72 P.S. § 1301.11(g)).

5.      Attached as Exhibit 3 is a true and correct copy of the notarized contract between Plaintiff and Defendants dated May 31, 2018.

6.      Attached as Exhibit 4 is a true and correct copy of the notarized contract between Plaintiff and Defendants dated April 17, 2019.

7.      I certify that the above statements are true and correct to the best of my knowledge, information and belief.

Dated: January 21, 2020

_____

AARON HASHIM

3

Exhibit 1

1/21/2020                                    USCLAIMSSERVICES

US Claims Services | Got a letter? | Pay invoice | Testimonials | Accreditations | About | Claim status

RECOVER YOUR UNCLAIMED PROPERTY

# We've found your lost money. Claim it.

Please enter claim number

Please enter last name

Find Out More



ABOUT US CLAIMS SERVICES

## A national team of private investigators working for you

Tens of billions of dollars worth of deposits are sitting in escrow across the United States, waiting to be claimed by their rightful owners. (Including you!)

At US Claims Services we employ a team of licensed private investigators whose sole task is to uncover lost property and track down its rightful owner. We believe your money should be in your pocket, not in a bank account collecting interest for someone else.

Let us help you recover the money you are owed.

Learn More About Us >

THANK YOU LETTERS FROM PAST CUSTOMERS

## Join thousands of happy customers

Over **half a million** recoveries and more than 10 years in the industry means that we have the experience to get results for our clients. Putting lost funds into the hands of their proper owners is what we do, and we take pride in it.

Customer Letters ›

Your lost money is waiting. Claim it now. 

FREQUENTLY ASKED QUESTIONS

## Is this money real?

Yes. Our licensed private investigators have helped over half a million people so far.

It's not hard for money to become lost. If a company has the wrong address on file for you and can't get you your check, they have no legal responsibility to track you down. The amount you are owed is added to the $50 billion dollars of lost money held in escrow throughout the United States. With tens of billions of dollars in limbo, is it hard to believe that some might be yours?

More FAQs ›



TAKE ACTION NOW

## Got a letter?

Our private investigators have already found your money. Enter the claim number from your letter to find out more.

Enter Your Claim Number Now ›

 US Claims Services (/home)

 (https://www.bbb.org/central-california-inland-empire/business-reviews/unclaimed-funds-retrieval-services/u-s-claims-services-inc-in-bakersfield-ca-850029026/#sealclick)

FAQ (/faq)      Contact (/contact)      Blog (/blog)      Privacy (/privacy)

Site Map (/sitemap)

## Phone: 661-399-1108

Customer service representatives are standing by: 8AM – 12PM. 1PM – 5PM PST Monday through Friday.

Copyright 2016 US Claims Services. All rights reserved.

Exhibit 2

**From:** Maria Muralles <mariam@usclaimsservices.com>
**Sent:** Thursday, March 5, 2015 9:21 AM
**To:** FinderRegistration@patreasury.gov
**Subject:** Changes to our current Agreement.

Dear Sirs,

According to the email received below, I will need to adjust the Agreement in order to obtain information on behalf of our clients. Attached is a copy of the revised Agreement now including our registration number and the new wording. Please let me know if this suffices.

Thank you in advance,

**Maria Lea Muralles**
Customer Service Administrator

Claims Department | Unclaimed Property
800.995.2416 Ext 110 | Fax 661.399.1201

Privacy Notice:  The information transmitted in this email is intended solely for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any use by person or entities other than the intended is prohibited. If you have received this email in error, please contact the sender and delete any material from any computer.

---

**From:** Baker, Jamie [mailto:jjbaker@patreasury.gov]
**Sent:** Thursday, March 05, 2015 8:44 AM
**To:** 'Maria Muralles'
**Subject:** FW: PID 12544243, Claim ID 78095512

Maria,

Please contact....

FinderRegistration@patreasury.gov

Thank you,

**Jamie Baker**
Manager, Bureau of Unclaimed Property

Pennsylvania Treasury
P.O. Box 1837 |Harrisburg, PA 17105
**P:** 717.705.8429| **F:** 717.705.6797
www.patreasury.gov

**Confidentiality Notice:** This electronic communication is privileged and confidential and is intended only for the party to whom it is addressed. Any use, dissemination, distribution, or copying of this information other than by the intended user(s) is unauthorized and may be unlawful. If received in error, please return to sender and delete the unauthorized communication.  Thank you.

**From:** Maria Muralles [mailto:mariam@usclaimsservices.com]
**Sent:** Thursday, March 05, 2015 11:34 AM
**To:** Baker, Jamie
**Cc:** Matter, Robert; Gurzenda, Karen
**Subject:** RE: PID 12544243, Claim ID 78095512

Good morning Jamie,

Since this new changes are now in effect, I will be modifying the Agreement with the proper requirement/changes to be able to contact you guys regarding our client. Can you please refer me to the proper person so I can have the new wording approved and avoid any issues down the road?

Thanks ☺

**Maria Lea Muralles**
Customer Service Administrator
Claims Department | Unclaimed Property
800.995.2416 Ext 110 | Fax 661.399.1201

Privacy Notice: The information transmitted in this email is intended solely for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any use by person or entities other than the intended is prohibited. If you have received this email in error, please contact the sender and delete any material from any computer.

---

**From:** Baker, Jamie [mailto:jjbaker@patreasury.gov]
**Sent:** Thursday, March 05, 2015 5:51 AM
**To:** 'Maria Muralles'
**Cc:** Matter, Robert; Gurzenda, Karen
**Subject:** RE: PID 12544243, Claim ID 78095512

Hello Maria,

Can you please instruct the claimant to contact our office to address this issue? Currently, My Money Monitor's agreement does not have specific language stating Treasury can discuss claim information with MMM.

Thank you,

**Jamie Baker**
Manager, Bureau of Unclaimed Property

Pennsylvania Treasury
P.O. Box 1837 |Harrisburg, PA 17105
**P:** 717.705.8429| **F:** 717.705.6797
www.patreasury.gov

**Confidentiality Notice:** This electronic communication is privileged and confidential and is intended only for the party to whom it is addressed. Any use, dissemination, distribution, or copying of this information other than by the intended user(s) is unauthorized and may be unlawful. If received in error, please return to sender and delete the unauthorized communication.  Thank you.

**From:** Maria Muralles [mailto:mariam@usclaimsservices.com]
**Sent:** Wednesday, March 04, 2015 7:43 PM
**To:** Baker, Jamie
**Subject:** PID 12544243, Claim ID 78095512

Hello Jamie,

Our client contacted our office and stated that he has not received his check. According to the site, his check was mailed out on 2/17/15 so theoretically he should have received it by now. Could you please confirm the address where it was mailed and also verify if the check was cashed?

Thank you in advance,

**Maria Lea Muralles**
Customer Service Administrator
Claims Department | Unclaimed Property
800.995.2416 Ext 110 | Fax 661.399.1201

Privacy Notice:  The information transmitted in this email is intended solely for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any use by person or entities other than the intended is prohibited. If you have received this email in error, please contact the sender and delete any material from any computer.



**I.**

This agreement into by and between _____ hereinafter referred to as "Claimant," and  MyMoneyMonitor.com , hereinafter referred to as "Agent." <mark>Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.</mark>

**II.**

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s):
Owner's Reported Address:
Reported By:
Property Type:
Amount:                       .
Property ID No:
MyMoneyMonitor.com Reference No:

**III.**

In consideration of Agent's reasonable efforts in providing services including but not limited to, ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of  **15% of the amount you recover**.

**IV.**

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

**V.**

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

**VI.**

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered.  Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent:  MyMoneyMonitor.com Address: 3801 Pegasus Drive Suite 101 Bakersfield, CA 93308

Daytime Phone: (661) 399-1108                    Date: 3/5/2015                .

Agent's Tax ID No.: EIN# 26-2196511     <mark>Registration No. 0980131-0315</mark>     Agent's Signature: _Paul Hishi_____

Print Name: _____        Date: _____

Address: _____

Signature: _____        Daytime Phone: _____

E-mail: _____        Relationship: ☐ Self  ☐ Heirs  ☐ POA  ☐ Executor

**PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY**

State of _____
County of _____

Before me, the undersigned authority, on this day personally appeared _____; known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS____DAY OF _____, 20__.

_____

Notary Public in and for the State of _____.
My commission expires: _____

Exhibit 3



*Payne Richards*
**& Associates**

**I.**

This agreement into by and between **Dominick Desimone** hereinafter referred to as "Claimant," and Payne Richards & Associates, hereinafter referred to as "Agent." Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.

**II.**

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s): **DOMINICK DESIMONE**
Owner's Reported Address: **845 CROSS ST, PHILADELPHIA, PA**
Reported By: **UNIVERSITY OF THE ARTS**
Property Type: **WAGES; PAYROLL UNCLAIMED**
Amount: **$841.97**
Property ID No: **20337856**
Payne Richards & Associates Reference No: **9351164**

**III.**

In consideration of Agent's reasonable efforts in providing services including but not limited to, ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of 15% of the amount recovered.

**IV.**

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

**V.**

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

**VI.**

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered and all fees are paid. Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent: Payne Richards & Associates   Address: 3801 Pegasus Drive Suite 101 Bakersfield, CA 93308

Daytime Phone: (661) 399-1108 _____ Date: 5/16/2018 _____

Agent's Tax ID No.: EIN# 05-0614871   Registration No. 098C131-0315   Agent's Signature: _Paul Hoshi_

Print Name: DOMINICK DESIMONE   Date: 5/31/18

Address: 845 CROSS STREET Phila, Pa 19147

E-mail: _____   Daytime Phone: (267) 444-1576

Signature: ✗ Dominick De Simone   Relationship: ☑ Self ☐ Heirs ☐ POA ☐ Executor

## PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY PUBLIC

State of PA
County of Phila

Before me, the undersigned authority, on this day personally appeared DOMINICK DESIMONE ; known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS 31st DAY OF May , 2018

_____
Notary Public in and for the State of PA
My commission expires: NOV 20 2019

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
LANCESS S. WILLIAMS, Notary Public
City of Philadelphia, Phila. County
My Commission Expires November 20, 2019

3801 Pegasus Drive, Suite 101, Bakersfield, CA 93308 • tel (661) 399-1108 • www.PRClaims.com

Exhibit 4



## I.

This agreement into by and between **Dominick Desimone** hereinafter referred to as "Claimant," and Payne Richards & Associates, hereinafter referred to as "Agent." Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.

## II.

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s): **DOMINICK DESIMONE**
Owner's Reported Address: **845 CROSS ST, PHILADELPHIA, PA**
Reported By: **ARAMARK**
Property Type: **WAGES; PAYROLL UNCLAIMED**
Amount: **$469.10**
Property ID No: **24159865**
Payne Richards & Associates Reference No: **9896080**

## III.

In consideration of Agent's reasonable efforts in providing service, including but not limited to, ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of 15% of the amount recovered.

## IV.

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

## V.

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

## VI.

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered and all fees are paid. Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent: Payne Richards & Associates   Address: 3801 Pegasus Drive Suite 101 Bakersfield, CA 93308

Daytime Phone: (661) 399-1108 _____   Date: 3/28/2019 _____

Agent's Tax ID No.: FIN# 05-0614871   Registration No. 0980131-0315   Agent's Signature: _____

Print Name: DOMINICK DESIMONE   Date: 4/17/19

Address: 845 CROSS ST Phila Pa 19147

E-mail:                                    Daytime Phone: 267-444-1576

Signature: Dominick DeSimore   Relationship: ☑Self ☐Heirs ☐POA ☐Executor

## PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY PUBLIC

State of PA
County of Phila

Before me, the undersigned authority, on this day personally appeared DOMINICK DESIM ONE ; known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS 17TH DAY OF April , 20 19

Celeste Cerino

Notary Public in and for the State of PA
My commission expires: 6/2/22

> Commonwealth of Pennsylvania - Notary Seal
> CELESTE CERINO, Notary Public
> Philadelphia County
> My Commission Expires June 2, 2022
> Commission Number 1256191

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and copy of Defendants' Opposition to Motion to Remand For

Lack of Subject Matter Jurisdiction was made on the below counsel of record via electronic mail

and ECF filing service:

Andrew B. Austin, Esquire
P.O. Box #54628
Philadelphia, PA 19148
austin@stackhousegroup.com


**PALMER LAW GROUP, A PLC**

By:_____/s/ William W. Palmer_____
        WILLIAM W. PALMER, ESQ.
        Admitted *Pro Hac Vice*
        2443 Fair Oaks Blvd., No. 545
        Sacramento, CA 95825
        (916) 972-0761


Date:  January 21, 2020