IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Dominick DeSimone | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO: 2:19-cv-06150-GJP |
| U.S. Claims Services, Inc. and | : |
| Paul Hashim | : |
| | : |
| | : |

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**

Defendants U.S. Claims Service, Inc. ("U.S. Claims Service") and Paul Hashim ("Hashim"), by and through their counsel, Marshall Dennehey Warner Coleman & Goggin and Palmer Law Group, a PLC, admitted *pro hac vice*, respectfully submit the follow reply memorandum of law in support of their Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 5).

I.  **ARGUMENT**

Plaintiff contends in opposing Defendants' Motion to Dismiss that Defendants' compliance with Pennsylvania law and regulations concerning the conduct of their business as registered Finders does not excuse Defendants from liability under the Pennsylvania Unfair Trade Practices and Consumer Protection ("UTPCPL") statute or the analogous Texas consumer protection statute. In support of this position, Plaintiff cites only the plainly distinguishable case of *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401 (E.D. Pa. 2016). In *Landau*, sales representatives of Viridian Energy PA purportedly made oral assurances and representations to plaintiff Landau that, if he purchased electricity from Viridian, plaintiff would enjoy lower rates than those offered by his current energy provider (PECO). (*Landau*, 223 F. Supp. 3d at 406.) Based on these oral

representations, plaintiff agreed to execute Viridian's standard customer service agreement, the terms of which were consistent with Pennsylvania law and authorized by the Public Utilities Commission ("PUC"). (*Id.*)

Subsequent to executing the standard customer agreement, plaintiff Landau's electricity bills increased significantly and ultimately exceeded the price range he was promised by the Viridian representatives. Landau sued on various theories, including a claim under the catch-all provision of the Pennsylvania UTPCPL. In response, Viridian pointed to the standard customer service agreement, which was consistent with Pennsylvania law and regulation, and argued that the UTPCPL claim was preempted by Pennsylvania regulations and the PUC's standards. Plaintiff responded that the oral misrepresentations from Viridian's agents constituted material misrepresentations in violation of the UTPCPL, which were independent of the approved customer service agreement.

In agreeing with plaintiff Landau, the Honorable Gerald Austin McHugh noted that Viridian's so-called "regulatory compliance defense" had no bearing to the case at issue. (*Id.*, at 41.) The Viridian agents' specific false and misleading oral statements were obviously not approved by PUC or consistent with Pennsylvania statutory or regulatory standards. Accordingly, no "safe harbor of regulatory compliance" would defeat Landau's claim for the defendant's oral misrepresentations. (*Id.*)

Here, Plaintiff Dominick DeSimone has not asserted any material misrepresentation of fact. There is no allegation that Defendants made any statement independent of the proposed contract that Defendants sent to DeSimone in connection with the claim for his property. And as the Complaint plainly states, the terms of the contract were consistent with the requirements of Pennsylvania law. Nonetheless, Plaintiff claims that the contract is misleading because of a

material omission; Plaintiff seeks, through misapplication of the UTPCPL, to impose a duty to disclose a specific disclaimer – that the Finder's services are not necessary to recover property – in the contract that Defendants send to their prospective customers. This is after the same Plaintiff received multiple notices from different sources (the company and the State) as to the unclaimed property that he lost in the first place. There can be no dispute that such disclaimer is not required by any of the statutory or regulatory provisions governing the business of Finders in the State of Pennsylvania. Thus, there is no legal duty to disclose this information. Under the Plaintiff's misplaced recovery theory, virtually every service provider would be compelled to disclose to Plaintiff that he may undertake the work, on his time, "for free."

As this Honorable Court recently acknowledged, "[o]missions can be actionable under Pennsylvania law if there is a duty to disclose." (*Snider v. Wolfington Body Co.*, No. 16-02843, 2016 U.S. Dist. LEXIS 143116, at *29 (E.D. Pa. Oct. 17, 2016) (dismissing material omission claim for failure to state a duty to disclose); *see also, Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 726 (E.D. Pa. 2014); *Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998).) In *Snider*, this Court dismissed claims for negligent misrepresentation and omission in an employment dispute, holding that the employer-defendant had no duty to disclose the allegedly omitted information concerning its Family Medical Leave Act benefits. In so holding, this Court relied in part upon the opinion in *Weisblatt v. Minnesota Mut. Life Ins. Co.*

The *Weisblatt* case is far more similar to the present action than *Landau*. In *Weisblatt*, plaintiff brought suit against an insurance carrier for the purchase of insurance benefits that plaintiff allegedly never requested from the defendant's insurance agent. One of the plaintiff's claims was that Minnesota Mutual's insurance agent omitted alternative types of insurance coverage that would have been more appropriate for plaintiff. In dismissing this omission claim,

3

the Honorable Stewart Dalzell noted that "the Pennsylvania Supreme Court stated unequivocally that "an omission is actionable only where there is an independent duty to disclose the omitted information." (*Id.*, at 380.) Finding that the contract between the parties at bar was an arms-length contract, and that neither statutory nor common law imposed any duty to disclose alternative insurance policies that may be equally suitable for the purchaser, the court dismissed the omission claim. In so dismissing, Judge Dalzell noted that in such arms-length transactions, where there is no fiduciary relationship or similar disparity in the parties' positions, reasonable parties must adhere to the principle of *caveat emptor*.

Similarly, in the case of *Grudkowski v. Foremost Ins. Co.*, No. 3:CV-12-1847, 2013 U.S. Dist. LEXIS 91848 (M.D. Pa. July 1, 2013), the Honorable A. Richard Caputo dismissed claims under the UTPCPL against another insurance carrier. There, plaintiff alleged that the defendant insurer issued three insurance policies that purported to offer cumulative insurance coverage for each of plaintiff's cars. However, because of the terms of the insurance policies, the cumulative coverage was "illusory." (*Id.*, 2013 U.S. Dist. LEXIS 91848, at *8.) Plaintiff policyholder therefore brought a class action against the insurer, alleging among other claims, a violation of the UTPCPL.

In dismissing the UTPCPL claim, the court noted that the insurance policies issued to Grudkowski contained clear, lawful language that was authorized by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). (*Id.*, at 30.) The court even noted that, "while it may seem somewhat unfair that premiums were paid for unrecoverable benefits, Foremost . . . complied with the MVFRL and charged the premiums approved by the Insurance Commissioner." *Id.*, at 31. Finally, the court concluded that "Grudkowski's remedy lies with the [Pennsylvania] legislature or Insurance Commissioner" and not the court. (*Id.*) Likewise, to the extent this

4

Plaintiff believes the Defendants' services are unnecessary, then he may take up his argument with the Pennsylvania legislature and the Treasurer. However, the Plaintiff would likely be asked by these decision makers to explain why this Plaintiff failed to respond to the other multiple notices that he received under the same statutory scheme from the company, which transferred his lost property, and the Treasurer, who provided statutory and constitutional notice, and this Plaintiff might perhaps even how he misplaced his own property in the first place.

The *Grudkowski* opinion cited as authority the 1999 Pennsylvania Superior Court opinion in *Fay v. Erie Ins. Grp.*, 723 A.2d 712 (Pa. Super. 1999). In *Fay*, the defendant insurance carrier issued two automobile insurance policies to the plaintiff and her husband. (*Id.* at 713.) Pursuant to the coverages purchased by the appellant, her and her husband were charged for and paid premiums for three accidental death benefits. (*Id.*) These policies expressly precluded the stacking of first party benefits. The policies also stated that no individual was entitled to recover duplicate benefits under the policies or other similar insurance policies. (*Id.*) After the appellant's husband died in an automobile accident, the action was commenced as a class action, alleging that the aforementioned restrictive terms in the policies were misleading in violation of the UTPCPL. (*Id.*)

Plaintiff argued that the insurance carrier "implicitly misrepresented the value of the accidental death benefits by offering and charging premiums for multiple benefits when it knew that the insureds would be entitled to only one recovery in the event of a claim under the policy." (*Id.* at 714-15.) In other words, the policies misrepresented the coverage by not explaining that multiple benefits were not available. In affirming dismissal of the UTPCPL claim, the Superior Court reasoned that the terms of the policy were clear, and, if the plaintiff confused about the terms of the policy, "it was incumbent upon [plaintiff] to have questioned this practice

5

at the time the policy was issued." (*Id.* at 715.) Moreover, the insured failed to state that she relied on the misrepresentations of the insurer or that she suffered a loss as a result of her reliance on the insurer (much like Plaintiff DeSimone, who never actually paid Defendants for the services rendered). (*Id.*) Thus, the Superior Court found that the insured failed to set forth a cause of action under the UTPCPL. (*Id.*)

The Superior Court concluded its decision by noting that:

> *In reaching this result, we are not unmindful of the fact that the insurer's practice of offering and collecting premiums for duplicative benefits that cannot be collected may appear to be unfair. However, motor vehicle insurance is a matter that is heavily regulated by both statute and the Insurance Commissioner. The policy here complied with the MVFRL and Appellee is entitled to charge premiums, the rates of which are approved by the Insurance Commissioner, for first party benefits requested by its insureds. If Appellant deems the practice objectionable, her remedy is to bring this matter to the attention of the legislature or the Insurance Commissioner rather than to seek a judicial solution. Finding that Appellant is not entitled to any relief, we affirm.*

(*Id.*)

Here, as in *Grudkowski* and *Fay*, the contract Defendants sent to Plaintiff was clear and unambiguous. Nothing in the Defendants' proposed agreement was misleading or otherwise false. If Plaintiff was "confused" as to the terms of the contract, or the utility of Defendants' services, "it was incumbent upon [plaintiff] to have questioned this practice at the time the policy was issued." (*Fay*, at 715.) Like the insurance industry, the Finders' industry is heavily regulated by both statute and the Treasury Department. Defendants' contract unquestionably complied with the statutory and regulatory provisions. So too, Defendant have complied with all registration requirements, despite Plaintiff's entirely unsupported assertion that Ms. Wysinger was "actually handling Plaintiff's claim." (*See* Plaintiff's Memorandum at pg. 4, Section 1.2.) Even if Ms. Wysinger were acting without proper registration – which she was not – Plaintiff cites no private

6

cause of action for such allegation. Defendants have properly registered as Finders, and are authorized to conduct this business in Pennsylvania for the fee approved by the Pennsylvania Government. If Plaintiff "deems [Defendants'] practice objectionable, [his] remedy is to bring the matter to the attention of the legislature or the [Treasury Department] rather than seek judicial solution." (*Id.*)

## II. CONCLUSION

For all the foregoing reasons, as well as the reasons stated in the Motion to Dismiss, Defendants U.S. Claims Services, Inc. and Paul Hashim respectfully request that this Honorable Court rule in favor of Defendants, and against Plaintiff, dismiss the complaint with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.**

By: /s/ John P. Quinn
JOHN P. QUINN, ESQ.
Attorney ID No.: 85239
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2883
jpquinn@mdwcg.com

**PALMER LAW GROUP, A PLC**

By: /s/ William W. Palmer
WILLIAM W. PALMER, ESQ.
Admitted *Pro Hac Vice*
2443 Fair Oaks Blvd., No. 545
Sacramento, CA 95825
(916) 972-0761
wpalmer@palmercorp.com

Date: January 24, 2020

## CERTIFICATE OF SERVICE

I hereby certify that true and copy of Defendants' Memorandum Of Law In Reply To Plaintiff's Opposition To Defendants' Rule 12(B)(6) Motion To Dismiss was made on the below counsel of record via electronic mail:

> Andrew B. Austin, Esquire
> P.O. Box #54628
> Philadelphia, PA 19148
> austin@stackhousegroup.com

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.**

By: /s/ John P. Quinn
JOHN P. QUINN, ESQ.
Attorney ID No.: 85239
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2883
jpquinn@mdwcg.com

Date: January 24, 2020