IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINICK DESIMONE, *Plaintiff,* v. U.S. CLAIMS SERVICES, INC., et al., *Defendants.* | CIVIL ACTION NO. 19-6149 & NO. 19-6150 |

**PAPPERT, J.**                                                                                                **March 11, 2020**

**MEMORANDUM**

     U.S. Claims Services told Dominick DeSimone that he had unclaimed property, specifically $469.10 in wages, in Pennsylvania.  DeSimone then entered into a contract with the company, pursuant to which U.S. Claims Services charged a fifteen percent fee for recovering DeSimone's money.  DeSimone now claims that he did not know that he could get his money back on his own by contacting the Pennsylvania Treasury.

     DeSimone brings this putative class action against U.S. Claims Services and its employee Paul Hashim.  He contends that he never would have contracted with the company and agreed to pay a fee for something he could have done himself for free.  He alleges that Defendants' failure to disclose that unclaimed property could be retrieved directly from the Pennsylvania Treasury at no cost violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law and Texas's Deceptive Trade Practices–Consumer Protection Act.  Defendants filed a Motion to Dismiss, which the Court grants for the reasons that follow.

1

I

U.S. Claims Services, a Texas corporation with its principal place of business in California, operates a business dedicated to connecting property owners with unclaimed property that escheats to the state. (Compl. ¶¶ 2 & 7, ECF No. 1.)[1] U.S. Claims Services first identifies the unclaimed property, which can typically be found in states' public treasury records. (*Id.* ¶ 8.) From there, the company locates the property owner using tools such as Intelius People Search or LexisNexis Public Records. (*Id.*) U.S. Claims Services then contacts the property owners, tells them of their unclaimed property and provides them a form to complete in order to recover their booty. (*Id.*)

In April of 2019, U.S. Claims Services contacted DeSimone, a citizen of Pennsylvania, advising him that he had $469.10 in unclaimed wages. (*Id.* ¶¶ 1, 28.) U.S. Claims Services sent DeSimone a contract that complied with Pennsylvania's Unclaimed Property Act,[2] which DeSimone signed, had notarized, and returned to U.S. Claims Services. (*Id.* ¶¶ 29 & 30.) After receiving the completed contract, U.S. Claims Services submitted DeSimone's claim to the Pennsylvania Treasury, which sent him the full amount of his funds. (*Id.* ¶ 32.) According to DeSimone, at no point during this process was he aware that he could have recovered the funds himself. (*Id.* ¶ 30.)

---

[1] All ECF citations refer to Civil Action No. 19-6150 unless otherwise specified.

[2] Pennsylvania law regulates property recovery professionals—known as "finders"—who assist claimants in retrieving unclaimed property. *See* (Compl. ¶ 22.) Under Pennsylvania's Unclaimed Property Act, 72 P.S. §§ 1301.11 *et seq.*, finders must register with the Pennsylvania Treasury and charge no more than a fifteen percent finder fee. *Id.* § 1301.11(g). The UPA also prescribes the contents in the finder agreements—*i.e.*, the contract between the property owner and the finder. *Id.* At all times relevant in the Complaint, U.S. Claims Services employed Paul Hashim as its registered finder in Pennsylvania. (Compl. ¶ 25.)

Several months later, U.S. Claims Services sent DeSimone an invoice for $70.36. (*Id.* ¶ 33.) According to DeSimone, he did not recall the reason for the invoice and was "confused" by its statement indicating that "prompt payment is appreciated so we may continue to search and locate any additional monies owed to you." (*Id.* ¶ 33.) DeSimone spoke to his brother about the invoice, who apparently advised DeSimone that the invoice was a "scam" because anyone could "recover unclaimed property himself for free." (*Id.* ¶ 34.) Upset that he had been "deceived" and was being charged for services that he could have performed himself, DeSimone refused to pay the invoice. (*Id.* ¶ 35.) DeSimone now alleges that had he known he could recover his money without the assistance of U.S. Claims Services or Hashim, he would have done so. (*Id.* ¶ 31.)

## II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

### III

DeSimone asserts consumer protection claims under both Pennsylvania and Texas law. Neither party addresses which state's law should apply.[3] Because this is a diversity case,[4] the Court must apply the choice of law rules of the forum state. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Pennsylvania's choice of law analysis involves a two-part inquiry. First, "[b]efore a choice of law question arises, there must be a conflict between the potentially applicable bodies of law." *See On Air Entm't Corp. v. Nat'l Indemn. Co*, 210 F.3d 146, 148–49 (3d. Cir. 2000). If there are relevant differences between the laws, the court then classifies the conflict as "true," "false," or "unprovided-for." *Hammersmith*, 480 F.3d at 230. When a true conflict exists, the court proceeds to the second step in the analysis and, analyzing each forum's relevant

---

[3] Courts in the Third Circuit "routinely find that facts are sufficiently developed to conduct the choice of law analysis at the motion to dismiss stage." *Valcom, Inc. v. Vellardita*, 2014 WL 1628431, at *8 (D.N.J. Apr. 23, 2014); *Cooper v. Samsung Elecs. of Am., Inc.*, 374 F. App'x 250, 255 n.5 (3d Cir. 2010) (unpublished) (rejecting argument that district court erred by addressing choice of law issue as to plaintiff's consumer fraud claim at motion to dismiss phase rather than at class certification stage).

[4] Under the Class Action Fairness Act of 2005, there is minimal diversity of citizenship between DeSimone and the Defendants, the proposed class size consists of at least one hundred members, and the amount in controversy exceeds $5 million, as aggregated across all individual claims. *See* 28 U.S.C. § 1332(d)(2), (5)(B), (6); (Order, ECF No. 16).

contacts, applies the law of the state with the greater interest in the matter at hand. *Hammersmith*, 480 F.3d at 230–31.

To establish a claim for nondisclosure under Texas's DTPCPA, a plaintiff must prove: "(1) a failure to disclose information concerning goods or services, (2) which was known at the time of the transaction, (3) if such failure was intended to induce the consumer into the transaction, and (4) the consumer would not have entered had the information been disclosed." *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 506 (Tex. App. 2004) (citing Tex. Bus. & Com. Code Ann. § 17.46(b)(24) (2002)). The statute does not require a fiduciary or confidential relationship.

By contrast, Pennsylvania's UTPCPL enumerates twenty unfair or deceptive acts, none of which expressly prohibit the failure to disclose. 73 P.S. §§ 201-2(4)(i)–(xx). The UTPCPL, however, does include a catch-all provision, which prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id.* § 201-2(4)(xxi). To state a claim under the catch-all provision, a plaintiff must allege that: (1) defendant engaged in deceptive conduct; (2) plaintiff justifiably relied on defendant's misrepresentation or deceptive conduct; and (3) plaintiff was damaged by his justifiable reliance on the defendant's alleged conduct. *Clark v. Allstate Ins. Co.*, No. 13-0271, 2013 WL 1905147, at *6 (E.D. Pa. May 7, 2013); *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa. Super. 2012).

When allegations underlying a UTPCPL claim involve a defendant's nondisclosure rather than misrepresentation, the omission is actionable only if there is a duty to disclose. In other words, for silence to be actionable there must be a duty to speak. *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989). In Pennsylvania, a

5

duty to speak requires the presence of a fiduciary or other confidential relationship "as prerequisite to liability for omissions." *Silverstein v. Percudani*, 2005 WL 1252199, at *8 (M.D. Pa. May 26, 2005) (quoting *Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F. Supp. 1185, 1187–88 n.1 (E.D. Pa. 1989). *See also Restatement (Second) of Torts* § 551(2)(a) (explaining the duty to disclose arises when there is a fiduciary or confidential relationship between the parties). Given the differences between liability for failure to disclose under Texas and Pennsylvania's consumer protection laws, the Court next determines the type of conflict.

A "true" conflict exists if both jurisdictions' interests would be impaired if its laws were not applied. *Hammersmith*, 480 F.3d at 230 n.9. A conflict is "false" when only one state's interests would be impaired by the application of the other state's law. *Wood Servs., Inc. v. Disability Advocates, Inc.*, 342 F. Supp. 3d 592, 608 n.9 (E.D. Pa. 2018). And an "unprovided for" conflict occurs when neither state's interests would be impaired if its laws were not applied. *Hammersmith*, 480 F.3d at 230 n.9. Here, a true conflict exists. Pennsylvania's interests would be impaired if the UTPCPL was not applied because the Commonwealth has an interest in protecting its own citizens from deceptive acts and practices. And here, where DeSimone's allegations implicate a finder registered under Pennsylvania's UPA, Pennsylvania also has an interest in ensuring that its finders abide by both the UPA and UTPCPL. Texas also arguably has an interest in applying its law, because one of the Defendants—U.S. Claims Services— is a Texas corporation.

Because a true conflict exists, the Court next "determine[s] which state has the greater interest in the application of its law." *Hammersmith*, 480 F.3d at 230 (internal

6

quotation marks omitted). In the context of putative class actions, courts have determined that "under Pennsylvania choice of law principles, each class member would be subject to the consumer fraud statutes of the member's home state because 'that state would have the paramount interest in applying its laws to protect its consumers.'" *Karnuth v. Rodale, Inc.*, 2005 WL 1683605, at *4 (E.D. Pa. July 18, 2005) (citing *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 211–18 (E.D. Pa. 2000)). DeSimone resides in Pennsylvania and the basis of his claim involves the retrieval of unclaimed funds from Pennsylvania's state treasury by a finder registered in the Commonwealth. The only relevant contact to Texas is that U.S. Claims Services is incorporated there. *See* (Compl. ¶ 2.) Because there are far more substantial contacts in Pennsylvania, the Court applies the UTPCPL.[5]

IV

Count I of the Complaint alleges that Defendants violated the UTPCPL by engaging in unfair or deceptive acts when they "fail[ed] to disclose that the services they provide are unnecessary and freely available from the state that is holding the property." (Compl. ¶ 52.) Defendants first contend that U.S. Claims Services and Hashim's compliance with Pennsylvania's Unclaimed Property Act, 72 P.S. § 1301.1–.29, requires dismissal of the UTPCPL claim. (Defs.' Mot. to Dismiss ("Defs.' Mot.") 7–8, ECF No. 5.) They also argue that they had no duty to disclose the fact that DeSimone could retrieve his unclaimed property himself, free of charge. (Defs.' Reply 3–7, ECF No. 11.)

---

[5] Because the choice of law analysis dictates that Pennsylvania law applies to DeSimone as the only plaintiff, Count II of the Complaint, which alleges a violation of Texas's Deceptive Trade Practice–Consumer Protection Act, is accordingly dismissed.

The UTPCPL is "a remedial statute intended to protect consumers from unfair or deceptive practices or acts" in the course of trade or commerce. *Bordoni v. Chase Home Finance LLC*, 374 F. Supp. 3d 378, 385 (E.D. Pa. 2019) (quoting *Balderston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001)). A plaintiff may bring a private cause of action under the UTPCPL if he suffers an ascertainable loss of money or property as the result of an unlawful method, act or practice. 73 P.S. § 201-9.2(a). The UTPCPL lists specific practices that constitute "unfair methods of competition" and "unfair or deceptive acts or practices." *Id.* § 201-2(4)(i)–(xx). Among these prohibited practices, the UTPCPL makes it unlawful to "knowingly misrepresent[ ] that services . . . are needed if they are not needed." *Id.* § 201-2(4)(xv). The UTPCPL also includes a catch-all provision, which prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id.* § 201-2(4)(xxi). DeSimone brings his UTPCPL claim under both the knowing misrepresentation and catch-all provisions. *See* (Compl. ¶ 58).

To establish a knowing misrepresentation under the UTPCPL, a plaintiff must allege (1) a material misrepresentation of an existing fact, (2) scienter, (3) justifiable reliance, and (4) damages. *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 413 (E.D. Pa. 2006). A claim under the catch-call provision requires showing that: (1) the defendant engaged in deceptive conduct; (2) plaintiff justifiably relied on defendant's misrepresentation or deceptive conduct; and (3) plaintiff was damaged by his justifiable reliance on the defendant's alleged conduct. *Clark*, 2013 WL 1905147, at *6.

Defendants believe that they cannot be liable under the UTPCPL because they complied with the UPA, which does not require finders to inform property owners of the option to retrieve their funds directly from the state for free. (Defs.' Mot. 2.) This type of "regulatory compliance defense" is of no avail. *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 420 (E.D. Pa. 2016) (explaining that the regulatory compliance defense for UTPCPL claims "is without precedential support").[6]

Defendants argue correctly, however, that DeSimone's UTPCPL claim fails because they had no legal duty to disclose that property owners can recover unclaimed funds directly from the state without a fee.[7] (Defs.' Reply 3.) As discussed above, a prerequisite for omissions to be actionable under the UTPCPL is the presence of a fiduciary duty or some other confidential relationship. *Silverstein*, 2005 WL 1252199, at *8 (quoting *Antinoph*, 703 F. Supp. at 1187–88 n.1); *see Weisblatt v. Minn. Mut. Life.*

---

[6] U.S. Claims Services also filed a separate declaratory judgment action asking the Court to declare that "there is no such cause of action against licensed finders" under Pennsylvania and Texas's unclaimed property laws. (No. 19-6149, Compl. ¶¶ 29–35, ECF No. 1.)

Article III of the Constitution and the Declaratory Judgment Act permit a district court to issue a declaratory judgment "in a case of actual controversy." *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996). Litigants do not satisfy the "actual controversy" requirement when their dispute becomes moot. *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1023–24 (3d Cir. 1980). Because the Court concludes that compliance with Pennsylvania's UPA or other state equivalent is no basis for dismissal of DeSimone's UTPCPL claim, there is no longer a live case or controversy in the declaratory judgment action. The Court accordingly lacks jurisdiction over U.S. Claims Services' declaratory judgment action and denies as moot DeSimone's Motion to Dismiss. *See* (No. 19-6149, ECF No. 7).

[7] Defendants raised the "no duty to disclose" argument for the first time in their Reply. Generally, it is improper for a party to raise arguments for the first time in a reply brief. *See Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief."). Even so, a court has discretion to consider new arguments. *Sabert Corp. v. PWP Indus., Inc.*, 2015 WL 5007838, at *1 n.3 (D.N.J. Aug. 20, 2015). A party is not prejudiced by new arguments raised in a reply brief if the court allows the party an opportunity to respond to the newly raised issues in a sur-reply brief. *Cornerstone Residence, Inc. v. City of Clairton*, 2018 WL 306670, at *4 (W.D. Pa Jan. 5, 2018). Because the Court allowed DeSimone an opportunity to respond to the "no duty to disclose" argument in a Sur-Reply, the Court will consider it.

*Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998) (dismissing UTPCPL knowing misrepresentation claim and concluding that omissions are actionable when "in breach of a duty to speak").

In Pennsylvania, some types of relationships give rise to a fiduciary duty as a matter of law. *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017) (listing principal and agent, trustee and *cestui que* trust, attorney and client, guardian and ward, and partners as examples). When a fiduciary duty does not exist as a matter of law, Pennsylvania courts nevertheless recognize confidential relationships in situations where "the relative position of the parties is such that one has the power and means to take advantage of, or exercise undue influence over, the other." *Id.* DeSimone has not alleged in his Complaint facts which could establish that a fiduciary or confidential relationship existed between him and U.S. Claims Services or Hashim. He accordingly cannot rely on Defendants' alleged omissions as a basis to plead a UTPCPL claim under the knowing misrepresentation or catch-all provisions.

V

Courts should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). "This certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (citing 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1474 (3d ed. 2019)). DeSimone is free to amend Count I consistent with this Memorandum to the extent he can alleges facts which could establish that Defendants had a duty to disclose to DeSimone that he could retrieve unclaimed property directly from the Pennsylvania Treasury free of charge.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.