# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dominick DeSimone | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO:  2:19-cv-06150-GJP |
| U.S. Claims Services, Inc. and | : | |
| Paul Hashim | : | |
| | : | |
| | : | |

## MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

John P. Quinn, Esq.
Karen Grethlein, Esq.
MARSHALL DENNEHEY
WARENER COLEMAN &
GOGGIN, P.C.
Attorney ID No.: 85239
Attorney for Defendants
2000 Market Street, Suite 2300
Philadelphia, Pennsylvania 19103
(215) 575-2883
jpquinn@mdwcg.com
kegrethlein@mdwcg.com

William W. Palmer, Esq.
PALMER LAW GROUP, A PLC
Admitted *Pro Hac Vice* Counsel
Attorney for Defendants
2443 Fair Oaks Blvd., No. 545
Sacramento, California 95825
(916) 972-0761
wpalmer@palmercorp.com

**TABLE OF CONTENTS**

I.  INTRODUCTION .........................................................................1

II.  ARGUMENT ............................................................................1

    A.  Plaintiff's "*Sub Silentio*" Argument is Misplaced.................................1

    B.  Plaintiff Has Failed to Comply With The Court's Order That
        Allowed Him to Set Forth Facts That Show a Confidential or
        Fiduciary Relationship Rather Than an Arm's Length Commercial
        Transaction ...........................................................................2

    C.  There Are no Allegations of Fraudulent or Deceptive Conduct ..........5

    D.  It is Impossible For Plaintiff to Show Facts Indicating a "Justifiable
        Reliance" Based on The Facts Set Forth on The Face of The First
        Amended Complaint ..............................................................9

    E.  Plaintiff's Licensing Theories Fail to Support a Claim Against Paul
        Hashim ...............................................................................10

II.  CONCLUSION .........................................................................10

CERTIFICATE OF SERVICE ..........................................................11

i

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Basile v. H & R Block*,
    777 A.2d 95, 101 (Pa. Super. 2001) ...............................................................................4

*Brown v. Johnson & Johnson*,
    64 F. Supp. 3d 717, 726 (E.D. Pa. 2014)........................................................................6

*eToll, Inc. v. Elias/Savion Advertising, Inc.*,
    811 A.2d 10, 23 (Pa. Super. 2003) ............................................................................3, 4

*Fay v. Erie Ins. Grp.*,
    723 A.2d 712 (Pa. Super. 1999).............................................................................7, 8, 9

*Frank v. Colt Industries*,
    *910 F.2d 90 (3d Cir. 1990)* ............................................................................................2

*Greenberg v. Life Ins. Co. of Virginia*,
    177 F.3d 507 (6th Cir. 1999)..........................................................................................3

*Grudkowski v. Foremost Ins. Co.*,
    No. 3:CV-12-1847, 2013 U.S. Dist. LEXIS 91848 (M.D. Pa. July 1, 2013)..........6, 7, 9

*In re Estate of Scott*,
    316 A.2d 883, 886 (Pa. 1974) ........................................................................................4

*International Raw Materials v. Stauffer Chem. Co.*,
    978 F.2d 1318 (3d Cir. 1992) .........................................................................................2

*Jackson v. University of Pittsburgh*,
    *826 F.2d 230 (3d Cir. 1987)* .........................................................................................2

*Laborers' Int'l Union v. Foster Wheeler Corp,*,
    26 F.3d 375 (3d Cir. 1994) .........................................................................................1, 2

*Lunderstadt v. Colafella*,
    *885 F.2d 66 (3d Cir. 1989)* ..........................................................................................2

*Simmons v. City of Philadelphia*,
    No. 16-02843, 2016 U.S. Dist. LEXIS 143116, at *29 (E.D. Pa. Oct. 17, 2016)............2

*Snider v. Wolfington Body Co.*,
    116 F.3d 373, 377 (9th Cir. 1997)...............................................................................5, 6

*Valley Forge Convention & Visitors Bureau v. Visitor's Services, Inc.*,
28 F.Supp.2d 947, 953 (E.D. Pa. 1998)..........................................................................4

*Weisblatt v. Minn. Mut. Life Ins. Co.*,
4 F. Supp. 2d 371, 380 (E.D. Pa. 1998)..........................................................................6

*Yenchi v. Ameriprise Fin., Inc.*,
161 A.3d 811 (2017) ......................................................................................2, 3, 4

## FEDERAL STATUTES AND REGULATIONS

### Federal Rules of Appellate Procedure

Rule 28 ..................................................................................................................2

Rule 28(a)(4) ..........................................................................................................2

### Federal Rules of Civil Procedure

Rule 12(b)(6)..........................................................................................................1

## PENNSYLVANIA STATE STATUTES

72 P.S. § 1301.10a ................................................................................................5

72 P.S. § 1301.12 .................................................................................................5

Defendants U.S. Claims Service, Inc., dba Payne Richards & Associates (hereafter "Payne Richards" or "Defendant") and Paul Hashim (hereafter "Hashim") (collectively, "Defendants"), respectfully submit the following reply memorandum of law in support of their Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## I.       INTRODUCTION

In his Opposition, the plaintiff Dominic DeSimone (hereafter "Plaintiff" or "DeSimone") explains that the thrust of his original Complaint has shifted in his FAC and it is no longer the mere act of mailing out solicitations, but it is now the act of entering into an arm's length commercial transaction that creates a "fiduciary duty" owed by Defendants to him.  Plaintiff argues that the one-page contract, after it is executed, requires Defendants to explain that their services are unnecessary, and that Plaintiff may perform the same work "for free."  In making this argument, Plaintiff misstates the fundamental laws of the State of Pennsylvania.  And several of the cases that Plaintiff cites do not stand for the propositions for which they are partially quoted.

## II.      ARGUMENT

### A.       Plaintiff's "*Sub Silentio*" Argument is Misplaced.

At pages 3, 4, 6, 7, Plaintiff conflates the rules of federal motion practice with those of the Federal Rules of Appellate Procedure.  Plaintiff miscites case law to argue that because Defendants did not address his novel agency theory in the opening motion to dismiss, then they have waived the argument and may not challenge the arguments raised in his opposition in their reply.  Plaintiff continues this theme throughout his Opposition (*see* pages 4, 6, 7), even adding headings like "Defendants Concede, *Sub Silento* [sic], Their Duty as Agent For Plaintiff And Property Owners."  (Opp. at p. 3.)  There is no such rule and the case that Plaintiff cites – *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375 (3d Cir. 1994) ("*Laborers' Int'l Union*") - does not

stand for this proposition.  The *Laborer's Int'l Union* case stands for the unremarkable proposition that an appellant may not raise a new argument that is not addressed in the opening brief on appeal.  *Laborer's Int'l Union* cites two cases that state the same fundamental rule of appellate procedure that is inapplicable here.  (*See International Raw Materials v. Stauffer Chem. Co*., 978 F.2d 1318 (3d Cir. 1992), *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir. 1991).  In *Simmons*, the Court held:

> "Under the specificity requirements of *Federal Rule of Appellate Procedure 28* and Third Circuit Rule 21, a passing reference to an issue in a brief will not suffice to bring that issue before this court on appeal.  *See Lunderstadt v. Colafella, 885 F.2d 66 (3d Cir. 1989)* (brief mention of issue did not suffice, under *Fed. R. App. P. 28(a)(2) & (4)*, to present issue on appeal); *Jackson v. University of Pittsburgh, 826 F.2d 230 (3d Cir. 1987)* (same).  In *Frank v. Colt Industries, 910 F.2d 90 (3d Cir. 1990)*, moreover, we squarely addressed the issue whether general arguments raised before the district court and on appeal were sufficient to frame a specific theory of the case that the defendant had not previously presented.  We concluded that, although it was conceivable that the defendant's previous arguments logically incorporated his new theory, "particularly where important and complex issues of law are presented, a far more detailed exposition of argument is required to preserve an issue." *Id. at 100* (citing *Fed. R. App. P. 28(a)(4)*)."

(*Simmons v. City of Philadelphia*, 947 F.2d at 1066, *supra*.)

**B.    Plaintiff Has Failed to Comply With The Court's Order That Allowed Him to Set Forth Facts That Show a Confidential or Fiduciary Relationship Rather Than an Arm's Length Commercial Transaction.**

Plaintiff references the Court's Memorandum and asserts that because he alleges a new "agency relationship," then he has established a "fiduciary duty."  (Opposition "Opp." at p. 1.)  But the Court's Memorandum rejected the collection of fiduciary duty cases that Plaintiff previously cited in his Sur-Reply at page 9, footnote 7.  At page 3, Plaintiff cites the single case *Yenchi v. Ameriprise Fin., Inc*., 161 A.3d 811 (2017) ("*Yenchi*") for the proposition that "…an agency relationship 'give[s] rise to a fiduciary duty as a matter of law.'"  This is not the holding of the Pennsylvania Supreme Court in its *Yenchi* decision, but the exact opposite, as this Court clearly

understood when it issued its opinion.  The *Yenchi* Court rejected the very theories that this Plaintiff is advancing now in this case.

The Supreme Court in *Yenchi* found that the consumers' evidence did not establish that they had a fiduciary relationship with the financial advisor because the consumers never ceded any decision-making authority to the advisor; they followed some of his recommendations and rejected others; they maintained and exercised decision-making control over their financial matters; and their lack of post-secondary high school education was not indicative of weakness or dependence; "the case presented an arm's-length consumer transaction in which the consumers accepted advice with respect to the purchase of a whole life insurance policy."  (*Yenchi* at p. 811.)

The *Yenchi* Court found fiduciary duties do not arise "merely because one party relies on and pays for the specialized skill of the other party."  (*Yenchi* at p. 822, (citing *eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 23 (Pa. Super. 2003).)  If this were the law in Pennsylvania, the Supreme Court continued, "…a fiduciary relationship could arise whenever one party had any marginal greater level of skill and expertise in a particular area than another party." (*Id.*; citing *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 522 (6th Cir. 1999) ("*Greenberg*").)

The *Greenberg* Court found that: "To hold otherwise would impose fiduciary obligations on the seller of goods or services in the vast multitude of ordinary arm's-length transactions simply on the basis that the seller possessed superior knowledge of the product being sold."  (*Id.*) This is exactly the situation here.  Further, "The superior knowledge or expertise of a party does not impose a fiduciary duty on that party or otherwise convert an arm's-length transaction into a confidential relationship."  (*Id.*)

The Supreme Court in *Yenchi* further found that:

"In this regard, the analysis is no different in a consumer transaction than in other fiduciary duty cases decided by this Court. "[T]he critical question is whether the relationship goes **beyond** mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on one side or 'weakness, dependence, or trust, justifiably reposed' on the other side," which results in the effective ceding of control over decision-making by the party whose property is being taken.  (*eToll, Inc*., 811 A.2d at 23 (emphasis in original) (holding that although an advertising company was a "trusted advisor" to a software developer, no fiduciary relationship existed between the parties) (citing *Basile v. H & R Block*, 777 A.2d 95, 101 (Pa. Super. 2001)).  A fiduciary duty may arise in the context of consumer transactions only if one party **cedes decision-making control to the other party**."

(*Yenchi*, 161 A.3d at 823, *supra* [Bolding in original].)

The *Yenchi* Court continued: "As we indicated in *Scott*, 'a business transaction may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his affairs to the other.'"  (*Yenchi* at p. 823 (citing *In re Estate of Scott,* 316 A.2d 883, 886 (Pa. 1974); *see also Valley Forge Convention & Visitors Bureau v. Visitor's Services, Inc*., 28 F.Supp.2d 947, 953 (E.D. Pa. 1998) ("There is a crucial distinction between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering an arm's-length commercial agreement[.]").)  Thus "Reliance on another's specialized skill or knowledge in making the purchase, without more, does not create a fiduciary relationship." (*Id.*)

The facts alleged in the FAC do not establish that the Plaintiff was subject to any overmastering influence by Defendants.  Plaintiff never spoke with Defendants and maintained and exercised decision-making control over his financial matters.  The Plaintiff alleges throughout his FAC that the process involved only government form filings and a one-page contract that is in the form proscribed and approved by the regulator – the Treasurer.  The Treasurer requires the Finders (like Defendants) to disclose every detail of the property, including its description, account number, and location.  (*See* FAC Exhs. A and B.)  Plaintiff is free to sign the contract, or not. The FAC does not explain why Plaintiff did not respond to any of the notices that he received from his former employer (pursuant to 72 P.S. § 1301.10a); or, the multiple notices from the Treasurer's

office included direct mail, publication notice, and internet notice (72 P.S. § 1301.12). Plaintiff's

property sat for two years on a government website for all the world to see.

In sum, Plaintiff entered an arm's length consumer contract with the statutorily regulated

Finder, received his funds and then refused to pay Payne Richards. Defendants next sent written

demands for large sums of money or he would sue them in a "nationwide class action lawsuit."

(*See* Case 2:19-cv-06149-GJP DKT No. 1, Exhs. C and D.) No confidential relationship exists.

**C.      There Are no Allegations of Fraudulent or Deceptive Conduct.**

Plaintiff has not asserted any material misrepresentation of fact. There is no allegation that

Defendants made any statement independent of the proposed contract that Defendants sent to

DeSimone in connection with the claim for his property. The FAC plainly states the terms of the

contract were consistent with the requirements of Pennsylvania law. Nonetheless, Plaintiff claims

that the contract is misleading because of a <u>material omission</u>. Plaintiff seeks, through

misapplication of the UTPCPL, to impose a duty to disclose a specific disclaimer – that the

Finder's services are unnecessary to recover property – in the contract that Defendants send to

their prospective customers. This is after the same Plaintiff received multiple notices from

different sources (the company and the State) as to the unclaimed property that he lost in the first

place. There can be no dispute that such disclaimer is not required by any of the statutory or

regulatory provisions governing the business of Finders in the State of Pennsylvania. Thus, there

is no legal duty to disclose this information.

As this Honorable Court recently acknowledged, "[o]missions can be actionable under

Pennsylvania law if there is a duty to disclose." (*Snider v. Wolfington Body Co.*, No. 16-02843,

2016 U.S. Dist. LEXIS 143116, at *29 (E.D. Pa. Oct. 17, 2016) (dismissing material omission

claim for failure to state a duty to disclose); *see also*, *Brown v. Johnson & Johnson*, 64 F. Supp.

3d 717, 726 (E.D. Pa. 2014); *Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998).)  In *Snider*, this Court dismissed claims for negligent misrepresentation and omission in an employment dispute, holding that the employer-defendant had no duty to disclose the allegedly omitted information concerning its Family Medical Leave Act benefits.  In so holding, this Court relied in part upon the opinion in *Weisblatt v. Minnesota Mut. Life Ins. Co*., 4 F. Supp. 2d 371 (E.D. Pa. 1998) ("*Weisblatt*").

In *Weisblatt*, plaintiff brought suit against an insurance carrier for the purchase of insurance benefits that plaintiff allegedly never requested from the defendant's insurance agent.  One of the plaintiff's claims was that Minnesota Mutual's insurance agent omitted alternative types of insurance coverage that would have been more appropriate for plaintiff.  In dismissing this omission claim, the Honorable Stewart Dalzell noted that "the Pennsylvania Supreme Court stated unequivocally that "an omission is actionable only where there is an independent duty to disclose the omitted information." (*Id.*, at 380.)  Finding that the contract between the parties at bar was an arms-length contract, and that neither statutory nor common law imposed any duty to disclose alternative insurance policies that may be equally suitable for the purchaser, the court dismissed the omission claim.  In so dismissing, Judge Dalzell noted that in such arms-length transactions, where there is no fiduciary relationship or similar disparity in the parties' positions, reasonable parties must adhere to the principle of *caveat emptor*.

Similarly, in the case of *Grudkowski v. Foremost Ins. Co*., No. 3:CV-12-1847, 2013 U.S. Dist. LEXIS 91848 (M.D. Pa. July 1, 2013), the Honorable A. Richard Caputo dismissed claims under the UTPCPL against another insurance carrier.  There, plaintiff alleged that the defendant insurer issued three insurance policies that purported to offer cumulative insurance coverage for each of plaintiff's cars.  However, because of the terms of the insurance policies, the cumulative

coverage was "illusory." (*Id.*, 2013 U.S. Dist. LEXIS 91848, at *8.)  Plaintiff policyholder therefore brought a class action against the insurer, alleging among other claims, a violation of the UTPCPL.

In dismissing the UTPCPL claim, like the allegations here, the court noted that the insurance policies issued to Grudkowski contained clear, lawful language that was authorized by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL").  (*Id.*, at 30.)  The court even noted that, "while it may seem somewhat unfair that premiums were paid for unrecoverable benefits, Foremost . . . complied with the MVFRL and charged the premiums approved by the Insurance Commissioner."  (*Id.*, at 31.)  Finally, the court concluded that "Grudkowski's remedy lies with the [Pennsylvania] legislature or Insurance Commissioner" and not the court.  (*Id.*)  Likewise, as noted in the MTD, to the extent this Plaintiff believes the Defendants' services are unnecessary, then he may take up his argument with the Pennsylvania Legislature and the Treasurer.  However, the Plaintiff would likely be asked by these decision makers to explain why this Plaintiff failed to respond to the other multiple notices that he received under the same statutory scheme from the company, and might perhaps even be asked how he misplaced his own property (paychecks) in the first place.

The *Grudkowski* opinion cited as authority the 1999 Pennsylvania Superior Court opinion in *Fay v. Erie Ins. Grp.*, 723 A.2d 712 (Pa. Super. 1999) ("*Fay*").  In *Fay*, the defendant insurance carrier issued two automobile insurance policies to the plaintiff and her husband.  (*Id.* at 713.)  Pursuant to the coverages purchased by the appellant, her and her husband were charged for and paid premiums for three accidental death benefits.  (*Id.*)  These policies expressly precluded the stacking of first party benefits.  The policies also stated that no individual was entitled to recover duplicate benefits under the policies or other similar insurance policies.  (*Id.*)  After the

appellant's husband died in an automobile accident, the action was commenced as a class action, alleging that the aforementioned restrictive terms in the policies were misleading in violation of the UTPCPL. (*Id.*)

Plaintiff argued that the insurance carrier "implicitly misrepresented the value of the accidental death benefits by offering and charging premiums for multiple benefits when it knew that the insureds would be entitled to only one recovery in the event of a claim under the policy." (*Id.* at 714-15.) In other words, the policies misrepresented the coverage by not explaining that multiple benefits were not available. In affirming dismissal of the UTPCPL claim, the Superior Court reasoned that the terms of the policy were clear, and, if the plaintiff confused about the terms of the policy, "it was incumbent upon [plaintiff] to have questioned this practice at the time the policy was issued." (*Id.* at 715.) Moreover, the insured failed to state that she relied on the misrepresentations of the insurer or that she suffered a loss as a result of her reliance on the insurer (much like Plaintiff DeSimone, who never actually paid Defendants for the services rendered). (*Id.*) Thus, the Superior Court found that the insured failed to set forth a cause of action under the UTPCPL. (*Id.*)

The Superior Court concluded its decision by noting that:

"[m]otor vehicle insurance is a matter that is heavily regulated by both statute and the Insurance Commissioner. The policy here complied with the MVFRL and Appellee is entitled to charge premiums, the rates of which are approved by the Insurance Commissioner, for first party benefits requested by its insureds. If Appellant deems the practice objectionable, her remedy is to bring this matter to the attention of the legislature or the Insurance Commissioner rather than to seek a judicial solution. Finding that Appellant is not entitled to any relief, we affirm."

(*Id.*)

Here, as in *Grudkowski* and *Fay*, the contract Defendants sent to Plaintiff was clear and unambiguous. Nothing in the Defendants' proposed agreement was misleading or otherwise false. If Plaintiff was "confused" as to the terms of the contract, or the utility of Defendants' services,

"it was incumbent upon [plaintiff] to have questioned this practice at the time the policy was issued." (*Fay*, at 715.)  Like the insurance industry, the Finders' industry is heavily regulated by both statute and the Treasury Department.  Defendants' contract unquestionably complied with the statutory and regulatory provisions.  If Plaintiff "deems the practice objectionable, [his] remedy is to bring the matter to the attention of the legislature or the [Treasury Department] rather than seek judicial solution." (*Id.*)

**D.     It is Impossible For Plaintiff to Show Facts Indicating a "Justifiable Reliance" Based on The Facts Set Forth on The Face of The First Amended Complaint.**

Defendants briefed the statutory scheme to show the Court that Plaintiff received multiple forms of notice regarding his unclaimed paychecks because it reveals that (1) Plaintiff did not possess "superior knowledge" regarding the property of the process; (2) there was no "justifiable reliance" on any statement or omission by the Defendants; (3) Plaintiff will have great difficulty establishing the "scienter" element.  Instead, Plaintiff argues that the operation of the statutory scheme is "a question of fact" (Opp. at p. 3) when the interpretation of statutes and contracts are questions of law for this Court to decide.  To the extent that Plaintiff did not receive notice from any source and was relying solely on Defendants, then he was free to plead these facts and to provide a lucid theory on how he was harmed by the Defendants and how a fiduciary relationship might exist.  The process is public and transparent, driven by state statutes, and involves – as Plaintiff argues – a "paint-by-numbers" claim process.  On the one hand, Plaintiff argues that the process is easy and may be done "for free," yet in the same voice argues that he may sign a commercial contract with a private company which must explain to him that the process is easy and he may complete the work "for free" without using the company's services.  The logic is confused and circular.  Most important, it is refuted by the voluminous law cited above.

/ / /

**E.     Plaintiff's Licensing Theories Fail to Support a Claim Against Paul Hashim.**

Finally, at pages 11-12, Plaintiff continues his theme that he is entitled to step into the shoes of the regulator (the Treasurer) and to police the State's licensing laws.  Plaintiff never explains why: (1) he has a private right of action against Defendant Hashim under this new licensing theory; (2) the harm that he suffered as a result of it; or (3) how the licensing practices of the State of Pennsylvania are deceptive.  There is no Claim for Relief directed at defendant Paul Hashim and the contract was between Payne Richards and Plaintiff using the form administered by the Treasurer.  Plaintiff does not plead any facts that office staff at Payne Richards "Maria Murelles" (FAC at ¶ 36) and "Shirley Wysinger," (*id*. at ¶ 37) receive payments from the owners of unclaimed property, like Plaintiff, that would require them to maintain licenses.  The FAC notes that the invoice to Plaintiff was received from Payne Richards.  (FAC at ¶ 50).

**II.     CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Honorable Court dismiss the FAC with prejudice.

May 1, 2020                                    Respectfully submitted,

                                               **PALMER LAW GROUP, A PLC**

                                               By:____/s/ William W. Palmer_____
                                                        WILLIAM W. PALMER, ESQ.
                                                        Admitted *Pro Hac Vice* Counsel
                                                        2443 Fair Oaks Blvd., No. 545
                                                        Sacramento, CA 95825

                                               **MARSHALL DENNEHEY WARNER
                                               COLEMAN & GOGGIN, P.C.**

                                               By:____/s/ John P. Quinn_____
                                                        JOHN P. QUINN, ESQ.
                                                        Attorney ID No.: 85239
                                                        2000 Market Street, Suite 2300
                                                        Philadelphia, PA  19103

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and copy of Defendants' Motion to Dismiss Plaintiff's Complaint

was made on the below counsel of record via electronic mail:

Andrew B. Austin, Esquire
P.O. Box #54628
Philadelphia, PA 19148
austin@stackhousegroup.com

**PALMER LAW GROUP, A PLC**

By:____/s/ William W. Palmer_____
WILLIAM W. PALMER, ESQ.
Admitted *Pro Hac Vice* Counsel
2443 Fair Oaks Blvd., No. 545
Sacramento, CA 95825
(916) 972-0761

Date:  May 1, 2020

11