# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Dominick **DeSimone**, <br><br> *Plaintiff,* <br><br> *vs.* <br><br> **U.S. Claims Services** Inc., <br> *and* Paul **Hashim**, <br><br> *Defendant(s).* | *No.* 19-CV-6150 (GJP) |

## NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that Dominick DeSimone, plaintiff in the above-captioned case, hereby appeals to the United States Court of Appeals for the Third Circuit from this Court's May 20th 2020 Order and Memorandum (*Ex. A, B*) and March 11th 2020 Order and Memorandum (*Ex. C, D*) granting Defendants' Motion(s) to Dismiss.

Respectfully Submitted,

**Andrew B. Austin**, Esq.
Pennsylvania Bar # 323768
*Attorney for Plaintiff-Appellant*

P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@stackhousegroup.com

# EXHIBIT A

May 20th 2020 Order

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DOMINICK DESIMONE,

*Plaintiff,*

v.

U.S. CLAIMS SERVICES, INC., and
PAUL HASHIM

*Defendants.*

CIVIL ACTION

NO. 19-6150

## ORDER

**AND NOW**, this 20th day of May 2020, upon consideration of Plaintiff DeSimone's Amended Complaint (ECF No. 19), Defendants' Motion to Dismiss (ECF No. 20), Plaintiff's Response (ECF No. 22), and Defendants' Reply (ECF No. 23), it is hereby **ORDERED** that the Motion is **GRANTED**. Counts I – IV are **DISMISSED** with prejudice. The Clerk shall close this case.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

Exhibit A                                                                                    3

# EXHIBIT B

May 20th 2020 Memorandum

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOMINICK DESIMONE,

　　　　　　　*Plaintiff,*

　　v.

U.S. CLAIMS SERVICES, INC., et al.,

　　　　　　　*Defendants.*

CIVIL ACTION

NO. 19-6150

**PAPPERT, J.**　　　　　　　　　　　　　　　　　**May 20, 2020**

### MEMORANDUM

U.S. Claims Services told Dominick DeSimone that he had unclaimed property, specifically $469.10 in wages, in Pennsylvania.  He then entered into a contract with the company, pursuant to which U.S. Claims Services charged a fifteen percent fee for recovering DeSimone's money.  DeSimone now claims that he did not know that he could get his money back on his own by contacting the Pennsylvania Treasury.  He contends that he never would have contracted with the company and agreed to pay a fee for something he could have done himself for free.

DeSimone brings this putative class action against U.S. Claims Services and its employee Paul Hashim.[1]  The Court dismissed DeSimone's original Complaint for failing to state a plausible claim for relief, but granted leave to amend.  (Order, ECF No. 18.)  DeSimone has filed an Amended Complaint, in which he realleges violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law and brings a new claim for fraudulent inducement.  (Am. Compl., ECF No. 19.)  Defendants filed a

---

[1]　　The Court detailed the case's factual background in a prior Memorandum.  *See* (Mem. Op., ECF No. 17).

1

Exhibit B　　　　　　　　　　　　　　　　　　　　　　　　　　　　5

Motion to Dismiss.  (ECF No. 20.)  The Court grants the Motion in its entirety for the reasons that follow.

I

To survive dismissal under Federal Rule of Civil Procedure Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face."  *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption."  *Id.*

II

Counts I and II of the Amended Complaint allege violations of the UTPCPL based on U.S. Claims Services' "fail[ure]" to disclose that the services they provide are

2

unnecessary and freely available from the state that is holding the property." (Am.
Compl. ¶¶ 69, 86.) In Counts III and IV, DeSimone alleges that Defendants engaged in
fraudulent inducement and violated the UTPCPL when they "fraudulently
misrepresented that Defendant Hashim was acting as a Finder for their unclaimed
property but instead delegated those responsibilities in violation of Pennsylvania state
law." (*Id.* ¶ 100; *see id.* ¶ 114.) The Court addresses the claims in turn.

A

1

Counts I and II of the Amended Complaint allege that Defendants engaged in
deceptive conduct (Count I) and knowing misrepresentation (Count II) in violation of
the UTPCPL. The UTPCPL is "a remedial statute intended to protect consumers from
unfair or deceptive practices or acts" in the course of trade or commerce. *Bordoni v.
Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 385 (E.D. Pa. 2019) (quoting *Balderston v.
Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001)). To state a
claim for deceptive conduct under the UTPCPL's catch-all provision, a plaintiff must
allege that (1) the defendant engaged in deceptive conduct; (2) the plaintiff justifiably
relied on defendant's misrepresentation or deceptive conduct; and (3) the plaintiff was
damaged by his justifiable reliance on the defendant's alleged conduct. *Clark v. Allstate
Ins. Co.*, 2013 WL 1905147, at *6 (E.D. Pa. May 7, 2013); *see* 73 P.S. § 201-2(4)(xxi). To
state a claim for knowing misrepresentation under the UTPCPL, the plaintiff must
allege: (1) a material misrepresentation of an existing fact; (2) scienter; (3) justifiable
reliance; and (4) damages. *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d
392, 413 (E.D. Pa. 2006); *see* 73 P.S. § 201-2(4)(xv).

3

Exhibit B                                                                                          7

When allegations underlying a UTPCPL claim involve a defendant's nondisclosure, the omission is actionable only if there is a duty to disclose.  In other words, for silence to be actionable there must be a duty to speak.  *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989).  In Pennsylvania, the presence of a fiduciary or other confidential relationship exists "as [a] prerequisite to liability for omissions." *Silverstein v. Percudani*, 2005 WL 1252199, at *8, *13 (M.D. Pa. May 26, 2005) (dismissing UTPCPL claim where defendant had no duty to disclose) (quoting *Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F. Supp. 1185, 1187–88 n.1 (E.D. Pa. 1989)).  *See also* Restatement (Second) of Torts § 551(2)(a) (explaining the duty to disclose arises when there is a fiduciary or confidential relationship between the parties).

The Court previously dismissed Counts I and II of DeSimone's original Complaint because he failed to allege plausible facts establishing the existence of a fiduciary or confidential relationship that would give rise to Defendants having a duty to disclose information.  (Mem. Op. 10, ECF No. 17.)  DeSimone now argues that his Amended Complaint sufficiently alleges the presence of a principal-agent relationship because the agreement he signed with U.S. Claims Services identified the company as his "Agent."  (Am. Compl. ¶¶ 23–24; Ex. A.)  DeSimone also alleges that the agreement gave Defendants "the legal power to authorize disbursement of [his money] from the state and bind [him] to that disbursement."  (*Id.* ¶ 26.)  Defendants, however, argue that these alleged facts are nonetheless insufficient to establish a confidential or fiduciary relationship.  (Defs.' Mot. to Dismiss 15–16, ECF No. 20.)  Because DeSimone's Amended Complaint still fails to plead sufficient facts establishing a

confidential or fiduciary relationship—which would in turn give rise to a duty to
disclose—the Court dismisses Counts I and II with prejudice.

2

Pennsylvania courts recognize three categories of relationships between
contracting parties: ordinary, arm's-length relationships; agency relationships; and
confidential relationships. *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 577 (Pa.
Super. Ct. 2006) (citing *Basile v. H & R Block, Inc.*, 761 A.2d 115, 1120 (Pa. 2000)).  In
some types of relationships, including agency relationships, a fiduciary duty exists as a
matter of law.  *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017) (listing
"principal and agent, trustee and cestui que trust, attorney and client, guardian and
ward, and partners" as examples).  When a fiduciary duty does not exist as a matter of
law, Pennsylvania courts nevertheless recognize the duty in the presence of confidential
relationships where "the relative position of the parties is such that one has the power
and means to take advantage of, or exercise undue influence over, the other."  *Id.*

DeSimone argues that the contract he signed established an agency relationship
because the document referred to U.S. Claims Services as the "Agent."  (Am. Compl. ¶¶
23, 24.)  The labels used on paper to classify a relationship, however, are not
dispositive.  *See Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563 (W.D. Pa. 2017)
(citing Restatement (Third) of Agency § 1.02)).  Instead, Pennsylvania law requires the
following three elements to establish an agency relationship: (1) the manifestation by a
principal that the agent shall act for him; (2) the agent's acceptance of the undertaking;
and (3) the mutual understanding that the principal is to be in control of the
undertaking.  *Basile*, 761 A.2d at 1120 (citing *Scott v. Purcell*, 415 A.2d 56, 60 (Pa.

5

1980)).  "[A]gency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary."  *Id.*  (quoting *Smalich v. Westfall*, 269 A.2d 476, 480 (Pa. 1971)).   The "distinctive feature of an agency relationship is the agent's power to affect the legal relationship of the principal with third parties." *Wisniski*, 906 A.2d at 577 (citing *Basile*, 761 A.2d at 1120).  DeSimone fails to adequately allege that the parties were in an agency relationship.  He asserts no facts indicating that he, as the purported principal, retained any control over U.S. Claims Services or Hashim in the recovery of his unclaimed funds.  By failing to plead facts indicating that DeSimone was "in control of the undertaking," he cannot sufficiently allege an agency relationship.[2]

Despite DeSimone's failure to adequately plead an agency relationship, the third category of relationships—confidential relationships—also gives rise to fiduciary duties. "In the business context, a confidential relationship is formed 'only if one party surrenders substantial control over some portion of his affairs to another.'" *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 2009 WL 2526436, at *4 (E.D. Pa. Aug. 12, 2009) (quoting *In re Scott's Estate*, 316 A.2d 883, 886 (Pa. 1974)).  Because most "commercial contracts for professional services involve one party relying on the other party's superior skill or expertise," a fiduciary duty does not arise "merely because one party relies on and pays for the specialized skill or expertise."  *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 23 (Pa. Super. Ct. 2002).  Instead, the critical

---

[2]      DeSimone also argues that the contract he signed necessarily established an agency relationship because Pennsylvania's Unclaimed Property Act requires that "a signed writing evidence some kind of agency relationship."  (Am. Compl. 27.)  The text of the UPA requires that "all agreements or powers of attorney" to recover unclaimed property comply with certain requirements, but nowhere in the Act does it specify that such an agreement between the property owner and finder constitutes a *per se* agency relationship.  *See* 72 P.S. § 1301.11(g).

question is whether circumstances exist such that the "parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Yenchi*, 161 A.3d at 820 (internal quotation marks and citation omitted.)  The Pennsylvania Supreme Court has recognized that confidential relationships often arise in situations involving close personal or family relationships, or where one party's advanced age or disease limits his capacity to understand the transaction in question.  *Id.* at 821.

DeSimone alleges that "Defendants profess[ed] their specialized expertise" and created the "impression that their services [were] essential and valuable" by holding themselves out as licensed professionals with ten years of experience.  (Am. Compl. ¶ 22.)  These factual allegations, however, are insufficient to plead the existence of a confidential relationship.  Indeed, "[t]he superior knowledge or expertise of a party does not impose a fiduciary duty . . . or otherwise convert an arm's-length transaction into a confidential relationship." *Yenchi*, 161 A.3d at 823.  DeSimone has alleged nothing more than Defendants' expertise; he fails to allege any facts showing he was overpowered or unduly dominated or influenced.

B

In Counts III and IV of Amended Complaint, DeSimone alleges for the first time a common law claim for "fraud/fraudulent inducement"[3] and additional violations of the

_____

[3]    To state a claim for fraudulent inducement, a plaintiff must allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (citation omitted); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*, 951 F.2d 1399, 1411 (3d Cir. 1991) (explaining fraudulent misrepresentation claims and fraudulent inducement claims involve the same elements).

7

Exhibit B                                                                                      11

UTPCPL.  In doing so, he alleges that Defendants fraudulently misrepresented that "Defendant Hashim was acting as Finder for [the] unclaimed property but instead delegated those responsibilities in violation of Pennsylvania state law."  (Am. Compl. ¶ 100; *see id.* ¶¶ 113–14.)  According to DeSimone, had he known that Hashim was delegating responsibilities to other employees in violation of Pennsylvania's Unclaimed Property Act, he would not entered into the contract.  *See* (Am. Compl. ¶¶ 107, 118).

The crux of both of these claims involves DeSimone's theory that Defendants violated the UPA by delegating tasks to employees who were not registered finders in Pennsylvania.  Under the UPA, a person may not, on behalf of another (1) "engage in any activity for the purpose of locating, delivering, recovering or assisting in the recovery of abandoned or unclaimed property," and (2) "receive a fee, compensation, commission or other remuneration for the activity" without first obtaining a certificate of registration from the Pennsylvania Treasury.  72 P.S. § 1301.11a(a).[4]  According to DeSimone, Defendants unlawfully delegated tasks to two unregistered employees of U.S. Claims Services—Maria Muralles and Shirley Wynsinger.  *See* (Am. Compl. ¶¶ 36–38.  DeSimone first alleges that Muralles acted as an unregistered finder when, in 2015, she emailed staff at the Pennsylvania Treasury to inquire about an unidentified

---

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see Petruska v. Gannan Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (explaining that a state law fraudulent misrepresentation claim must be pled with particularity under Rule 9(b)).  To satisfy Rule 9(b)'s pleading requirements, the plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

[4]     To date, no Pennsylvania or federal court has interpreted or applied this section of the UPA.

Exhibit B

individual's claim.  *See* (*id.* ¶ 36, Ex. G).[5]  The Muralles email exchange, which

DeSimone attached to his Amended Complaint, occurred three years prior to him ever

entering into an agreement with U.S. Claims Services.  *See* (*id.*)  DeSimone does not

allege (nor could he) that she acted as an unregistered finder for either of his two

unclaimed property agreements in 2018 and 2019.  *See* (*id.*; Exs. A, B).

DeSimone next alleges that Wynsinger "actually perform[ed] the responsibilities

of a Pennsylvania 'finder'" for DeSimone's claims because the invoices he received

included on them an email address for shirleyw@usclaimsservices.com.  (Am. Compl.

¶ 37, Exs. C, D.)  DeSimone fails to plausibly allege, however, any actions on

Wynsinger's part in which she located, delivered, recovered or assisted in recovering

DeSimone's unclaimed property, or that she received a fee for her activities.  *See* 72 P.S.

§ 1301.11a(a).  There mere inclusion of an email address on an invoice is insufficient to

plausibly allege that any individual other than Hashim acted as DeSimone's unclaimed

property finder.  Indeed, the only individual that DeSimone alleges solicited him to

assist in the recovery of his unclaimed wages was Hashim, who DeSimone

acknowledges is a registered finder in Pennsylvania.  (Am. Compl. ¶¶ 43, 48.)

DeSimone's inability to plead sufficient facts alleging that Defendants "illegally

and impermissibly" delegated the responsibilities of a finder to unregistered individuals

dooms both his fraudulent inducement and UTPCPL claims.  With respect to his

fraudulent inducement claim, DeSimone fails to allege that Defendants misrepresented

Hashim's role as the finder for his unclaimed property.  *See Bortz*, 729 A.2d at 560

---

[5]      In deciding a motion to dismiss, a court may consider documents attached to or submitted
with the complaint without converting the motion into one for summary judgment.  *Pryor v. National
Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

Exhibit B                                                                                        13

(explaining that to state a claim for fraudulent inducement, plaintiff must allege a representation that was made falsely).  Without this misrepresentation, DeSimone's allegation that he would not have entered into the agreement "absent these false representations" cannot withstand a motion to dismiss.  *See* (Am. Compl. ¶ 107.)  It is for this same reason that his UTPCPL claim in Count IV also fails.[6]

III

A court should grant a plaintiff leave to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Third Circuit has instructed district courts to "offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).  Because the Court has already granted DeSimone leave to amend his complaint once, any additional amendments would be futile.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.

---

[6]    Although neither party raised the issue, Counts III and IV are also subject to dismissal under the economic loss doctrine.  The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  Under this doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damages." *Excavation Techs. Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009) (internal quotation marks and citation omitted).  Because the core of DeSimone's allegations in Counts III and IV is that Hashim did not fulfill his obligation of performance under the contract when he allegedly delegated responsibilities to unregistered finders, the economic loss doctrine bars these claims.

10

# EXHIBIT C

March 11th 2020 Order

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINICK DESIMONE, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | |
| U.S. CLAIMS SERVICES, INC., and | NO. 19-6149 & |
| PAUL HASHIM | NO. 19-6150 |
| *Defendants.* | |

## <u>ORDER</u>

**AND NOW**, this 11th day of March 2020, upon consideration of Plaintiff's

Complaint (No. 19-6150, ECF No. 1), Defendants' Motion to Dismiss (No. 19-6150, ECF

No. 5), Plaintiff's Response (No. 19-6150, ECF No. 8), Defendants' Reply (No. 19-6150,

ECF No. 11), and Plaintiff's Sur-Reply (No. 19-6150, ECF No. 15), it is hereby

**ORDERED** that the Motion is **GRANTED**:

1. Count I is **DISMISSED** without prejudice;

2. Count II is **DISMISSED** with prejudice;

3. DeSimone may file an amended complaint on or before April 1, 2020;

4. DeSimone's Motion to Dismiss (No. 19-6149, ECF No. 7) is **DENIED** as moot;

   and

5. The Clerk shall close Civil Action No. 19-6149.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

Exhibit C

16

# EXHIBIT D

March 11th 2020 Memorandum

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOMINICK DESIMONE,

    *Plaintiff,*

  v.

U.S. CLAIMS SERVICES, INC., et al.,

    *Defendants.*

CIVIL ACTION
NO. 19-6149 &
NO. 19-6150

**PAPPERT, J.**            **March 11, 2020**

#### <u>MEMORANDUM</u>

  U.S. Claims Services told Dominick DeSimone that he had unclaimed property, specifically $469.10 in wages, in Pennsylvania.  DeSimone then entered into a contract with the company, pursuant to which U.S. Claims Services charged a fifteen percent fee for recovering DeSimone's money.  DeSimone now claims that he did not know that he could get his money back on his own by contacting the Pennsylvania Treasury.

  DeSimone brings this putative class action against U.S. Claims Services and its employee Paul Hashim.  He contends that he never would have contracted with the company and agreed to pay a fee for something he could have done himself for free.  He alleges that Defendants' failure to disclose that unclaimed property could be retrieved directly from the Pennsylvania Treasury at no cost violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law and Texas's Deceptive Trade Practices–Consumer Protection Act.  Defendants filed a Motion to Dismiss, which the Court grants for the reasons that follow.

1

Exhibit D                           

## I

U.S. Claims Services, a Texas corporation with its principal place of business in California, operates a business dedicated to connecting property owners with unclaimed property that escheats to the state. (Compl. ¶¶ 2 & 7, ECF No. 1.)[1] U.S. Claims Services first identifies the unclaimed property, which can typically be found in states' public treasury records. (*Id.* ¶ 8.) From there, the company locates the property owner using tools such as Intelius People Search or LexisNexis Public Records. (*Id.*) U.S. Claims Services then contacts the property owners, tells them of their unclaimed property and provides them a form to complete in order to recover their booty. (*Id.*)

In April of 2019, U.S. Claims Services contacted DeSimone, a citizen of Pennsylvania, advising him that he had $469.10 in unclaimed wages. (*Id.* ¶¶ 1, 28.) U.S. Claims Services sent DeSimone a contract that complied with Pennsylvania's Unclaimed Property Act,[2] which DeSimone signed, had notarized, and returned to U.S. Claims Services. (*Id.* ¶¶ 29 & 30.) After receiving the completed contract, U.S. Claims Services submitted DeSimone's claim to the Pennsylvania Treasury, which sent him the full amount of his funds. (*Id.* ¶ 32.) According to DeSimone, at no point during this process was he aware that he could have recovered the funds himself. (*Id.* ¶ 30.)

---

[1]     All ECF citations refer to Civil Action No. 19-6150 unless otherwise specified.

[2]     Pennsylvania law regulates property recovery professionals—known as "finders"—who assist claimants in retrieving unclaimed property. *See* (Compl. ¶ 22.) Under Pennsylvania's Unclaimed Property Act, 72 P.S. §§ 1301.11 *et seq.*, finders must register with the Pennsylvania Treasury and charge no more than a fifteen percent finder fee. *Id.* § 1301.11(g). The UPA also prescribes the contents in the finder agreements—*i.e.*, the contract between the property owner and the finder. *Id.* At all times relevant in the Complaint, U.S. Claims Services employed Paul Hashim as its registered finder in Pennsylvania. (Compl. ¶ 25.)

2

Exhibit D                                                                                        19

Several months later, U.S. Claims Services sent DeSimone an invoice for $70.36. (*Id*. ¶ 33.)  According to DeSimone, he did not recall the reason for the invoice and was "confused" by its statement indicating that "prompt payment is appreciated so we may continue to search and locate any additional monies owed to you."  (*Id*. ¶ 33.) DeSimone spoke to his brother about the invoice, who apparently advised DeSimone that the invoice was a "scam" because anyone could "recover unclaimed property himself for free."  (*Id*. ¶ 34.)  Upset that he had been "deceived" and was being charged for services that he could have performed himself, DeSimone refused to pay the invoice. (*Id*. ¶ 35.)  DeSimone now alleges that had he known he could recover his money without the assistance of U.S. Claims Services or Hashim, he would have done so.  (*Id*. ¶ 31.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an

3

Exhibit D

entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)

(quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to

those allegations for which there is sufficient factual matter to render them plausible

on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016)

(internal quotation and citation omitted).  "Conclusory assertions of fact and legal

conclusions are not entitled to the same presumption."  *Id.*

### III

DeSimone asserts consumer protection claims under both Pennsylvania and

Texas law.  Neither party addresses which state's law should apply.[3]  Because this is a

diversity case,[4] the Court must apply the choice of law rules of the forum state.

*Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (citing *Klaxon Co. v.

Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  Pennsylvania's choice of law analysis

involves a two-part inquiry.  First, "[b]efore a choice of law question arises, there must

be a conflict between the potentially applicable bodies of law."  *See On Air Entm't Corp.

v. Nat'l Indemn.* Co, 210 F.3d 146, 148–49 (3d. Cir. 2000).  If there are relevant

differences between the laws, the court then classifies the conflict as "true," "false," or

"unprovided-for."  *Hammersmith*, 480 F.3d at 230.  When a true conflict exists, the

court proceeds to the second step in the analysis and, analyzing each forum's relevant

---

[3]      Courts in the Third Circuit "routinely find that facts are sufficiently developed to conduct the choice of law analysis at the motion to dismiss stage." *Valcom, Inc. v. Vellardita*, 2014 WL 1628431, at *8 (D.N.J. Apr. 23, 2014); *Cooper v. Samsung Elecs. of Am., Inc.*, 374 F. App'x 250, 255 n.5 (3d Cir. 2010) (unpublished) (rejecting argument that district court erred by addressing choice of law issue as to plaintiff's consumer fraud claim at motion to dismiss phase rather than at class certification stage).

[4]      Under the Class Action Fairness Act of 2005, there is minimal diversity of citizenship between DeSimone and the Defendants, the proposed class size consists of at least one hundred members, and the amount in controversy exceeds $5 million, as aggregated across all individual claims.  *See* 28 U.S.C. § 1332(d)(2), (5)(B), (6); (Order, ECF No. 16).

4

Exhibit D                                                                                                         21

contacts, applies the law of the state with the greater interest in the matter at hand. *Hammersmith*, 480 F.3d at 230–31.

To establish a claim for nondisclosure under Texas's DTPCPA, a plaintiff must prove: "(1) a failure to disclose information concerning goods or services, (2) which was known at the time of the transaction, (3) if such failure was intended to induce the consumer into the transaction, and (4) the consumer would not have entered had the information been disclosed." *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 506 (Tex. App. 2004) (citing Tex. Bus. & Com. Code Ann. § 17.46(b)(24) (2002)). The statute does not require a fiduciary or confidential relationship.

By contrast, Pennsylvania's UTPCPL enumerates twenty unfair or deceptive acts, none of which expressly prohibit the failure to disclose. 73 P.S. §§ 201-2(4)(i)–(xx). The UTPCPL, however, does include a catch-all provision, which prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id.* § 201-2(4)(xxi). To state a claim under the catch-all provision, a plaintiff must allege that: (1) defendant engaged in deceptive conduct; (2) plaintiff justifiably relied on defendant's misrepresentation or deceptive conduct; and (3) plaintiff was damaged by his justifiable reliance on the defendant's alleged conduct. *Clark v. Allstate Ins. Co.*, No. 13-0271, 2013 WL 1905147, at *6 (E.D. Pa. May 7, 2013); *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa. Super. 2012).

When allegations underlying a UTPCPL claim involve a defendant's nondisclosure rather than misrepresentation, the omission is actionable only if there is a duty to disclose. In other words, for silence to be actionable there must be a duty to speak. *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989). In Pennsylvania, a

5

Exhibit D                                                                                              22

duty to speak requires the presence of a fiduciary or other confidential relationship "as prerequisite to liability for omissions." *Silverstein v. Percudani*, 2005 WL 1252199, at *8 (M.D. Pa. May 26, 2005) (quoting *Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F. Supp. 1185, 1187–88 n.1 (E.D. Pa. 1989). *See also Restatement (Second) of Torts* § 551(2)(a) (explaining the duty to disclose arises when there is a fiduciary or confidential relationship between the parties). Given the differences between liability for failure to disclose under Texas and Pennsylvania's consumer protection laws, the Court next determines the type of conflict.

A "true" conflict exists if both jurisdictions' interests would be impaired if its laws were not applied. *Hammersmith*, 480 F.3d at 230 n.9. A conflict is "false" when only one state's interests would be impaired by the application of the other state's law. *Wood Servs., Inc. v. Disability Advocates, Inc.*, 342 F. Supp. 3d 592, 608 n.9 (E.D. Pa. 2018). And an "unprovided for" conflict occurs when neither state's interests would be impaired if its laws were not applied. *Hammersmith*, 480 F.3d at 230 n.9. Here, a true conflict exists. Pennsylvania's interests would be impaired if the UTPCPL was not applied because the Commonwealth has an interest in protecting its own citizens from deceptive acts and practices. And here, where DeSimone's allegations implicate a finder registered under Pennsylvania's UPA, Pennsylvania also has an interest in ensuring that its finders abide by both the UPA and UTPCPL. Texas also arguably has an interest in applying its law, because one of the Defendants—U.S. Claims Services— is a Texas corporation.

Because a true conflict exists, the Court next "determine[s] which state has the greater interest in the application of its law." *Hammersmith*, 480 F.3d at 230 (internal

6

quotation marks omitted).  In the context of putative class actions, courts have determined that "under Pennsylvania choice of law principles, each class member would be subject to the consumer fraud statutes of the member's home state because 'that state would have the paramount interest in applying its laws to protect its consumers.'"  *Karnuth v. Rodale, Inc.*, 2005 WL 1683605, at *4 (E.D. Pa. July 18, 2005) (citing *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 211–18 (E.D. Pa. 2000)).  DeSimone resides in Pennsylvania and the basis of his claim involves the retrieval of unclaimed funds from Pennsylvania's state treasury by a finder registered in the Commonwealth. The only relevant contact to Texas is that U.S. Claims Services is incorporated there. *See* (Compl. ¶ 2.)  Because there are far more substantial contacts in Pennsylvania, the Court applies the UTPCPL.[5]

IV

Count I of the Complaint alleges that Defendants violated the UTPCPL by engaging in unfair or deceptive acts when they "fail[ed] to disclose that the services they provide are unnecessary and freely available from the state that is holding the property." (Compl. ¶ 52.)  Defendants first contend that U.S. Claims Services and Hashim's compliance with Pennsylvania's Unclaimed Property Act, 72 P.S. § 1301.1–.29, requires dismissal of the UTPCPL claim.  (Defs.' Mot. to Dismiss ("Defs.' Mot.") 7–8, ECF No. 5.)  They also argue that they had no duty to disclose the fact that DeSimone could retrieve his unclaimed property himself, free of charge.  (Defs.' Reply 3–7, ECF No. 11.)

---

[5]      Because the choice of law analysis dictates that Pennsylvania law applies to DeSimone as the only plaintiff, Count II of the Complaint, which alleges a violation of Texas's Deceptive Trade Practice–Consumer Protection Act, is accordingly dismissed.

7

Exhibit D                                                                                                                 24

The UTPCPL is "a remedial statute intended to protect consumers from unfair or deceptive practices or acts" in the course of trade or commerce. *Bordoni v. Chase Home Finance LLC*, 374 F. Supp. 3d 378, 385 (E.D. Pa. 2019) (quoting *Balderston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001)).  A plaintiff may bring a private cause of action under the UTPCPL if he suffers an ascertainable loss of money or property as the result of an unlawful method, act or practice.  73 P.S. § 201-9.2(a).  The UTPCPL lists specific practices that constitute "unfair methods of competition" and "unfair or deceptive acts or practices."  *Id.* § 201-2(4)(i)–(xx).  Among these prohibited practices, the UTPCPL makes it unlawful to "knowingly misrepresent[ ] that services . . . are needed if they are not needed."  *Id.* § 201-2(4)(xv). The UTPCPL also includes a catch-all provision, which prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  *Id.* § 201-2(4)(xxi).  DeSimone brings his UTPCPL claim under both the knowing misrepresentation and catch-all provisions.  *See* (Compl. ¶ 58).

To establish a knowing misrepresentation under the UTPCPL, a plaintiff must allege (1) a material misrepresentation of an existing fact, (2) scienter, (3) justifiable reliance, and (4) damages.  *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 413 (E.D. Pa. 2006).  A claim under the catch-call provision requires showing that: (1) the defendant engaged in deceptive conduct; (2) plaintiff justifiably relied on defendant's misrepresentation or deceptive conduct; and (3) plaintiff was damaged by his justifiable reliance on the defendant's alleged conduct.  *Clark*, 2013 WL 1905147, at *6.

8

Exhibit D                                                                                          25

Defendants believe that they cannot be liable under the UTPCPL because they complied with the UPA, which does not require finders to inform property owners of the option to retrieve their funds directly from the state for free. (Defs.' Mot. 2.)  This type of "regulatory compliance defense" is of no avail. *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 420 (E.D. Pa. 2016) (explaining that the regulatory compliance defense for UTPCPL claims "is without precedential support").[6]

Defendants argue correctly, however, that DeSimone's UTPCPL claim fails because they had no legal duty to disclose that property owners can recover unclaimed funds directly from the state without a fee.[7]  (Defs.' Reply 3.)  As discussed above, a prerequisite for omissions to be actionable under the UTPCPL is the presence of a fiduciary duty or some other confidential relationship.  *Silverstein*, 2005 WL 1252199, at *8 (quoting *Antinoph*, 703 F. Supp. at 1187–88 n.1); *see Weisblatt v. Minn. Mut. Life.*

---

[6]      U.S. Claims Services also filed a separate declaratory judgment action asking the Court to declare that "there is no such cause of action against licensed finders" under Pennsylvania and Texas's unclaimed property laws.  (No. 19-6149, Compl. ¶¶ 29–35, ECF No. 1.)
        Article III of the Constitution and the Declaratory Judgment Act permit a district court to issue a declaratory judgment "in a case of actual controversy."  *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996).  Litigants do not satisfy the "actual controversy" requirement when their dispute becomes moot.  *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1023–24 (3d Cir. 1980).  Because the Court concludes that compliance with Pennsylvania's UPA or other state equivalent is no basis for dismissal of DeSimone's UTPCPL claim, there is no longer a live case or controversy in the declaratory judgment action.  The Court accordingly lacks jurisdiction over U.S. Claims Services' declaratory judgment action and denies as moot DeSimone's Motion to Dismiss.  *See* (No. 19-6149, ECF No. 7).

[7]      Defendants raised the "no duty to disclose" argument for the first time in their Reply.  Generally, it is improper for a party to raise arguments for the first time in a reply brief.  *See Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief.").  Even so, a court has discretion to consider new arguments.  *Sabert Corp. v. PWP Indus., Inc.*, 2015 WL 5007838, at *1 n.3 (D.N.J. Aug. 20, 2015).  A party is not prejudiced by new arguments raised in a reply brief if the court allows the party an opportunity to respond to the newly raised issues in a sur-reply brief.  *Cornerstone Residence, Inc. v. City of Clairton*, 2018 WL 306670, at *4 (W.D. Pa Jan. 5, 2018).  Because the Court allowed DeSimone an opportunity to respond to the "no duty to disclose" argument in a Sur-Reply, the Court will consider it.

9

Exhibit D                                                                                                      26

*Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998) (dismissing UTPCPL knowing misrepresentation claim and concluding that omissions are actionable when "in breach of a duty to speak").

In Pennsylvania, some types of relationships give rise to a fiduciary duty as a matter of law. *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017) (listing principal and agent, trustee and *cestui que* trust, attorney and client, guardian and ward, and partners as examples). When a fiduciary duty does not exist as a matter of law, Pennsylvania courts nevertheless recognize confidential relationships in situations where "the relative position of the parties is such that one has the power and means to take advantage of, or exercise undue influence over, the other." *Id.* DeSimone has not alleged in his Complaint facts which could establish that a fiduciary or confidential relationship existed between him and U.S. Claims Services or Hashim. He accordingly cannot rely on Defendants' alleged omissions as a basis to plead a UTPCPL claim under the knowing misrepresentation or catch-all provisions.

V

Courts should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). "This certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (citing 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1474 (3d ed. 2019)). DeSimone is free to amend Count I consistent with this Memorandum to the extent he can alleges facts which could establish that Defendants had a duty to disclose to DeSimone that he could retrieve unclaimed property directly from the Pennsylvania Treasury free of charge.

An appropriate Order follows.

10

Exhibit D                                                                                          27

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.

11

Exhibit D

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this **Notice of Appeal** and any accompanying memorandum or documents upon the parties or their counsel via Electronic Case Filing on **Friday, June 5th 2020**.

Respectfully Submitted,

**Andrew B. Austin**, Esq.
Pennsylvania Bar # 323768
*Attorney for Plaintiff-Appellant*

P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@stackhousegroup.com